ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS ET ALS., peticionarios, *v.* JOHNNY RIVERA MORALES Y/O JOHNNY TRUCKING, recurrido.

*Número:* CC-2002-549    *Resuelto:* 8 de mayo de 2003

*Yanira Mercado Ghigliotty* y *Leslie J. Hernández Crespo*, abogadas de la parte peticionaria; *Pedro R. López de Victoria Gómez*, abogado de la parte recurrida.

El Juez Asociado Señor Corrada Del Río emitió la opinión del Tribunal.

Nos corresponde resolver dos asuntos. En primer lugar, debemos determinar cuál es el alcance de la jurisdicción de la Administración de Reglamentos y Permisos para adjudicar y evaluar permisos de uso, de construcción y de desarrollo de terrenos en áreas no zonificadas. En segundo lugar, debemos determinar los criterios que un tribunal deberá evaluar al presentarse una petición de *injunction* al amparo del Art. 28 de la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 71 *et seq.*).

I

El 14 de julio de 2000 la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) concedió un permiso de uso al Sr. Johnny Rivera Morales (en adelante señor Rivera Morales o recurrido), con el propósito de que operara las oficinas profesionales de su negocio, Johnny Trucking, dedicado al alquiler de equipos pesados y camiones de acarreo.[1]

El 7 de marzo de 2001 el Lcdo. Dennis H. Núñez Ríos, en representación de varios residentes de las comunidades de Christian Belén y Jatibonito del Municipio de Aibonito, remitió una carta a A.R.Pe. en la cual informó que posiblemente el negocio del señor Rivera Morales operaba sin los correspondientes permisos de uso. Señaló, además, que

---

[1] Véase Apéndice E, pág. 59. El negocio del señor Rivera Morales se encuentra ubicado en la Carretera 14, Km. 48.8, en el Barrio Asomante del Municipio de Aibonito.

las actividades realizadas en dicho negocio interferían con la seguridad, la salud y el disfrute de las propiedades de los vecinos de las áreas colindantes.[2]

En atención a los señalamientos del licenciado Núñez Ríos, A.R.Pe. realizó una serie de inspecciones al negocio del recurrido, la primera de las cuales fue el 16 de marzo de 2001.[3] En ésta se encontró que en las oficinas profesionales de dicho negocio se operaba un área de estacionamientos y de mantenimiento de camiones sin los permisos de uso requeridos por ley y dentro de un área no zonificada por la Junta de Planificación de Puerto Rico. En consecuencia, el 23 de marzo de 2001 el licenciado Núñez Ríos presentó formalmente una querella ante A.R.Pe.

En respuesta a este recurso, el 20 de abril de 2001 el señor Rivera Morales procedió a presentar una Consulta de Ubicación ante dicha agencia, con el propósito de obtener el permiso de uso para el mencionado estacionamiento.[4]

Posteriormente, el 11 de mayo de 2001 A.R.Pe. realizó una segunda inspección, en la que determinó que el referido negocio continuaba operando sin los permisos de uso correspondientes. Como resultado de ello, el 18 de junio de 2001 A.R.Pe. envió una carta que solicitaba al recurrido que en un periodo de quince días compareciera ante dicha agencia para mostrar evidencia en contrario.[5]

Ante dicho requerimiento, el señor Rivera Morales pro-

---

[2] Indicó, en su carta, que el negocio del señor Rivera Morales generaba ruidos innecesarios desde tempranas horas de la madrugada hasta entrada la noche. Asimismo, señaló que en los terrenos de dicho negocio ubican dos tanques de combustible diesel, los cuales se encuentran a pasos de una quebrada que colinda con dicho solar. Véase Apéndice E, págs. 53–54.

[3] Véase Apéndice E, pág. 55.

[4] El señor Rivera Morales alegó, *inter alia*, que al momento de concedérsele el permiso de uso para el establecimiento de sus oficinas profesionales, la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) no le requirió el correspondiente permiso de uso para el área de estacionamiento. Fue al momento en que intentó obtener la licencia sanitaria cuando el Departamento de Salud se lo exigió para todas las estructuras y el estacionamiento. Apéndice E, págs. 120–121.

[5] Apéndice E, pág. 61.

cedió a comunicarse con el Centro de Servicios de A.R.Pe. en Guayama, e informó que había presentado una solicitud de permiso de uso, la cual se encontraba en su fase ambiental. En días posteriores a dicha comunicación, el 30 de julio de 2001, el recurrido compareció personalmente a dicho Centro de Servicios para recibir una orientación al respecto. Asimismo, al día siguiente, solicitó por escrito una prórroga de noventa días para cumplir con los requerimientos de la querella. Solicitó, además, que se le concediera un periodo de tiempo suficiente para realizar una consulta de ubicación ante la Junta de Planificación, ya que entendía que A.R.Pe. no tenía jurisdicción en las áreas no zonificadas.[6]

Mediante comunicación escrita de 29 de agosto de 2001, A.R.Pe. le informó al recurrido que no tenía delegada la jurisdicción para adjudicar solicitudes de construcción y de permisos de uso en las áreas no zonificadas, por lo que recomendó a éste que gestionara ante la Junta de Planificación la correspondiente consulta de ubicación y la tramitación de dichos permisos.

Así las cosas, el 5 de octubre de 2001 A.R.Pe. realizó una tercera inspección en la que encontró que el negocio del recurrido continuaba operando sin los permisos exigidos por ley.[7]

Ante tales circunstancias, el 16 de noviembre de 2001 A.R.Pe. presentó una Petición de *Injunction* ante el Tribunal de Primera Instancia, Sala Superior de Aibonito (en adelante TPI) al amparo de los Arts. 16, 17 y 28 de su ley habilitadora, Ley Núm. 76, *supra*, para que dicho foro expidiese una orden que paralizara inmediatamente los usos ilegales de las áreas de estacionamiento de Johnny Trucking. El 29 de noviembre de 2001 el TPI ordenó la paralización temporera del uso ilegal al que se estaba dedicando el negocio del señor Rivera Morales y señaló la

---

[6] Apéndice E, pág. 64.

[7] Apéndice E, pág. 65.

vista del caso para el 28 de diciembre de 2001, la cual se reseñaló, a su vez, para el 7 de febrero de 2002.[8]

Dos días antes de la celebración de la vista, el 5 de febrero de 2002, A.R.Pe. realizó una cuarta inspección. Nuevamente, se encontró que el negocio del señor Rivera Morales continuaba operando; en esta ocasión, en desafío a la orden de paralización emitida por el TPI.[9]

Así las cosas, en la vista celebrada el 7 de febrero de 2002 A.R.Pe. solicitó al TPI que ordenara la paralización permanente de las operaciones del negocio del recurrido debido a que se encontraba funcionando en contravención al ordenamiento jurídico vigente. Por su parte, el señor Rivera Morales alegó que A.R.Pe. carecía de jurisdicción para conceder permisos en áreas no zonificadas, lo cual la deslegitimaba para reclamar por el cumplimiento de las leyes y los reglamentos aplicables a dichas áreas. Asimismo, le notificó a dicho foro que había presentado ante la Junta de Planificación la Consulta de Ubicación Núm. 2002–68–0055–JPU para operar el estacionamiento de vehículos pesados como uso industrial.[10] El TPI ordenó a ambas partes someter memorandos de derecho en los cuales ampliaran la discusión sobre el asunto jurisdiccional.

Luego de examinar dichos memorandos, y tras varios incidentes procesales, el 8 de marzo de 2002 *el TPI ordenó la paralización de los procedimientos en el caso de autos ante ese foro hasta tanto la Junta de Planificación pusiera en vigor las disposiciones de la Ley Núm. 129 de 12 de septiembre de 2001, Leyes de Puerto Rico, pág. 630.* De igual forma, le concedió al señor Rivera Morales el término de cuarenta y cinco días para culminar con el proceso de obtención o denegación del permiso solicitado, una vez la Junta de Planificación aprobara la reglamentación pertinente, la cual pondría en vigor las disposiciones de la Ley

---

[8] Apéndice E, págs. 68–71.

[9] Apéndice E, pág. 77.

[10] Apéndice E, pág. 78.

Núm. 129, *supra*. El TPI permitió, además, que se continuara con la operación del negocio del recurrido con la condición de que no se realizaran actividades que afectaran la comunidad aledaña ni el medio ambiente.[11]

Inconforme, el 12 de abril de 2002 A.R.Pe. recurrió al Tribunal de Circuito de Apelaciones (en adelante TCA) y señaló que había errado el TPI al no dictar la orden de paralización permanente solicitada y al ordenar la paralización de los procedimientos ante ese foro, al tiempo que le permitió a Johnny Trucking continuar con sus operaciones sin los permisos de uso correspondientes. El TCA, mediante Resolución de 17 de junio de 2002, procedió a revocar la determinación del foro de instancia y concluyó que la concesión de permisos de uso en áreas no zonificadas es materia dentro de la competencia exclusiva de A.R.Pe., y como tal goza de legitimación para presentar un *injunction* ante el TPI con miras a prohibir cualquier uso no autorizado en dichas áreas.[12] Dicho foro devolvió el caso a instancia para que se considerara el correspondiente balance de intereses en conflicto, para entonces evaluar si procedía conceder un *injunction* permanente en el caso de autos.[13]

De esta Resolución, acude ante nos A.R.Pe. y señala el siguiente error:

> Erró el Tribunal de Circuito de Apelaciones al ordenar al Tribunal de Primera Instancia, Sala Superior de Aibonito, considerar el balance de intereses en conflicto y los planteamientos de la parte recurrida al momento de adjudicar la controversia

---

[11] Apéndice E, págs. 132–135.

[12] El Tribunal de Circuito de Apelaciones (en adelante TCA) fundamentó su decisión con el siguiente argumento: "[a]unque la facultad de la Junta de delegar a ARPE aprobaciones de consultas en áreas no zonificadas pueda resultar controversial, su potestad de delegarle funciones en etapas operacionales de proyectos o cuya decisión no requiera implantar o definir una política pública general no lo es. Creemos que la presentación de una petición de *injunction* para prohibir a una parte operar un negocio sin el correspondiente permiso de uso pertenece a este último tipo de determinación". Apéndice A, pág. 13.

[13] Asimismo, concluyó el TCA que no percibía fundamento en derecho alguno para que el TPI se abstuviera de adjudicar la petición y paralizar los procedimientos. Apéndice A, págs. 1–14.

como si se tratara de un injunction clásico. Petición de *certiorari*.

Mediante Resolución de 20 de septiembre de 2002, expedimos el auto de *certiorari*. Contando con la comparecencia de ambas partes, resolvemos.

## II

Desde el siglo pasado ha sido política pública del Gobierno del Estado Libre Asociado de Puerto Rico dirigir el proceso de planificación de nuestra isla hacia un desarrollo integral sostenible que asegure el juicioso uso de las tierras y fomente la conservación de los recursos naturales para el disfrute y beneficio de todos.[14]

Conforme con estos principios, el 24 de junio de 1975 se promulgó la Ley Núm. 75, conocida también como la Ley Orgánica de la Junta de Planificación de Puerto Rico (en adelante Ley Núm. 75), 23 L.P.R.A. sec. 62 *et seq.* Dicha ley designó a la Junta de Planificación como el organismo estatal encargado de guiar el desarrollo integral de Puerto Rico de modo coordinado, adecuado y económico con el propósito de fomentar la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y lograr la mayor eficiencia en el uso de las tierras y de otros recursos naturales. 23 L.P.R.A. sec. 62(c).

Asimismo, surge de la Exposición de Motivos de dicha ley que se reconoció la necesidad de crear un organismo gubernamental que tuviese a su cargo las facultades, en las fases operacionales, que hasta entonces habían correspondido a la Junta de Planificación.[15]

---

[14] Véase Objetivos y Políticas Públicas del Plan de Usos de Terrenos de Puerto Rico, 23 R.P.R. sec. 650.821 *et seq.*

[15] Ello debido a que el cúmulo de funciones que la Junta tenía le impedía cumplir con su rol primordial de orientar y coordinar el desarrollo integral de Puerto Rico.

Así, mediante la Ley Núm. 76 de 24 de junio de 1975, Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. sec. 71 *et seq.*, se creó A.R.Pᴇ., cuerpo que inmediatamente pasó a ser el brazo operacional de la Junta de Planificación, al estar encargada de aplicar y velar por el cumplimiento tanto de las leyes y los reglamentos de planificación como de los propios reglamentos que a tales fines se adopten. 23 L.P.R.A. sec. 71d; *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986). Con la aprobación de ambas leyes, se delegaron en A.R.Pᴇ. varias facultades, algunas de las cuales veremos a continuación.

■ Según lo dispuesto en la Ley Núm. 75, *supra,* se delegó competencia a A.R.Pᴇ. en aquellos casos o determinaciones en los que medien cualesquiera de las siguientes cuatro condiciones:

(i) *Que requieran acción en la "fase operacional" ...;*
(ii) *Que la estructuración o decisión a adoptarse no requiera implantar una política general o una definición de política pública, por haber sido éstas ya establecidas o adoptadas por la Junta;*
(iii) *Que la Junta determine, a la luz de la función de dicha Administración, que pueden resolverse los casos o adoptarse las determinaciones con más celeridad o eficiencia por la Administración; y*
(iv) *Que la delegación de éstos en la Administración no cause entorpecimiento indebido a dicha agencia para cumplir con las funciones que la ley impone.* (Énfasis suplido.) 23 L.P.R.A. sec. 62(j)(19)(a).

Asimismo, la Ley Núm. 75, *supra,* faculta a la Junta a delegar en A.R.Pᴇ. la autoridad para adoptar enmiendas a los mapas de zonificación en áreas previamente zonificadas por la Junta, y podrá considerar y resolver consultas de ubicación y de proyectos públicos. 23 L.P.R.A. sec. 62(j)(19)(b).[16]

---

[16] La Junta de Planificación posee entre sus facultades el poder para adoptar un Reglamento de Zonificación, de manera que pueda guiar y controlar el uso y desarrollo de los terrenos en Puerto Rico tanto en áreas urbanas como rurales. *Mediante la zonificación se establecen las normas esenciales sobre cómo y dónde deben ubicarse las múltiples actividades sociales y económicas de Puerto Rico.* A través de

Posteriormente, mediante la Ley Núm. 129, *supra*, la Asamblea Legislativa enmendó la Ley Núm. 75, *supra*, para añadir una quinta condición en la cual se faculta a la Junta a delegar en A.R.P℮. la facultad para considerar algunos trámites operacionales en las áreas no zonificadas por la Junta de Planificación.([17]) A tono con lo anterior, se procedió a añadir un quinto apartado al inciso (19) del Art. 11 de la ley, que dispone lo siguiente:

(a) Casos o determinaciones *en l*[a]*s que medien cualesquiera de las siguientes condiciones*:

.    .    .    .    .    .    .    .    .

(v) *que la Junta no se haya reservado jurisdicción exclusiva para atender dichos casos y los mismos se relacionen con áreas no zonificadas.*
*En estos casos, las decisiones que pueda tomar la Administración no establecerán una política general o definirán política pública, quedando esta responsabilidad en jurisdicción exclusiva de la Junta.* (Énfasis suplido.) 23 L.P.R.A. 62 j(19)(v) (Sup. 2002).

---

este proceso se clasifican los terrenos en zonas o distritos *y se establecen para cada uno disposiciones específicas sobre el uso de los terrenos y sobre las obras y estructuras a permitirse.* Véase Introducción del Reglamento de Planificación Núm. 4, Reglamento Núm. 4898, Departamento de Estado, 16 de septiembre de 1992. Existen varias razones por las cuales la Junta de Planificación puede decidir no zonificar un área; entre ellas podemos destacar el que se quieran congelar terrenos para futuros desarrollos, o que se quieran proteger por cuestiones ambientales, o que se especule sobre el valor de éstos o simplemente que aún no se haya zonificado. Por ello, se entiende que en algunas de estas áreas no zonificadas se debe presentar la consulta de ubicación en primera instancia a la Junta.

([17]) Surge de la Exposición de Motivos de dicha ley que la razón principal por la que la Asamblea Legislativa enmendó la Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. sec. 63 *et seq.*) fue a consecuencia de una decisión emitida por este Tribunal en el caso *Com.Vec. Pro-Mej., Inc. v. J.P.*, 147 D.P.R. 750, 762 (1999), en el que concluimos que:

"[D]e las disposiciones legales relacionadas con la delegación de funciones de la Junta a A.R.P.℮., *se desprende que el legislador no tuvo la intención de autorizar a la Junta a delegar en A.R.P.℮. la toma de decisiones relacionadas con las áreas no zonificadas. La Ley Núm. 75 ... al enumerar las instancias de la delegación de una agencia a otra, omite hacer referencia a la delegación de funciones en áreas no zonificadas. A través del estatuto, el legislador autoriza la delegación de la consideración de proyectos y enmiendas a los mapas de zonificación sólo en aquellas áreas que han sido previamente zonificadas.*" (Énfasis suplido.)

En dicho caso, este Tribunal concluyó que A.R.P℮. no tenía delegada la facultad para considerar propuestos usos temporeros de terrenos en los casos de plantas dosificadoras de asfalto en áreas no zonificadas. Por consiguiente, era necesario efectuar el trámite correspondiente de consulta de ubicación ante la Junta de Planificación.

La aprobación de dicha enmienda estaba sujeta a que la Junta de Planificación elaborara dentro del término de noventa días y adoptara, bajo las disposiciones pertinentes de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq., la reglamentación necesaria para definir con precisión el alcance, las responsabilidades, las limitaciones y las condiciones de la delegación otorgada mediante esta ley.* Dichas facultades y responsabilidades delegadas entrarían en vigor una vez fuese aprobada la reglamentación descrita en el citado artículo por el Secretario de Estado o el Gobernador. Véase, además, 23 L.P.R.A. sec. 62(j)(19)(b).

Por tal razón, la Junta de Planificación elaboró el Reglamento para Delegar a la Administración de Reglamentos y Permisos la Adjudicación de Permisos de Usos y Construcción y Desarrollo de Terrenos en Áreas No Zonificadas y para Establecer Criterios para su Evaluación, conocido también como Reglamento para Delegar Funciones en Áreas No Zonificadas (Reglamento de Planificación Núm. 27 de la Junta de Planificación), Reglamento Núm. 6517, Departamento de Estado, 19 de septiembre de 2002. En éste se establecieron los criterios mínimos para guiar y controlar el uso y desarrollo de los terrenos en áreas no zonificadas de Puerto Rico para contribuir a la seguridad, el orden, la convivencia, la solidez económica y el bienestar general de sus futuros habitantes.[18]

■ Así, con la aprobación de dicho reglamento, se delegó en A.R.Pe. la facultad para conceder permisos de uso y construcción y el desarrollo de terrenos en áreas zonificadas y no zonificadas, en las que la Junta considere que pueden ser atendidas con mayor agilidad y eficiencia por dicha agencia, y en aquellas que no se requiera la implan-

---

[18] Lo anterior contribuye a regular la discreción de A.R.Pe. al ejercer las facultades delegadas y establece unas normas y criterios claros en los procedimientos ante dicha agencia en beneficio de los ciudadanos.

tación de una política pública.([19]) Véase Reglamento para Delegar Funciones en Áreas No Zonificadas, *supra*, Sec. 1.03.([20]) Asimismo, todas las determinaciones que A.R.Pe. tome a base de las delegaciones que le han sido autorizadas, deberán ser compatibles con las políticas, las normas y los reglamentos adoptados por la Junta de Planificación. Art. 11 de la Ley Núm. 75, *supra*.

Una vez definido el alcance de su jurisdicción respecto a las áreas no zonificadas, nos corresponde determinar cuáles mecanismos A.R.Pe. tiene a su disposición para hacer valer tanto las leyes y los reglamentos de la Junta de Planificación como las determinaciones que ambos organismos tomen en cuanto a la planificación y el desarrollo de terrenos en Puerto Rico. Veamos.

## III

Además de tener delegada la facultad de conceder y evaluar permisos de uso tanto en áreas zonificadas como en las que no lo están, la ley habilitadora de A.R.Pe. establece unos mecanismos que dicha agencia podrá utilizar

---

([19]) Desde la aprobación del referido reglamento, A.R.Pe. puede conceder permisos para aquellos usos que se vayan a dedicar a los siguientes fines: agroindustriales y agropecuarios; casas de una o dos familias; edificios para apartamentos de hasta diez unidades básicas de viviendas; hospedajes especializados; centros de cuidos de niños y envejecientes; *proyectos de carácter industrial liviano que no excedan de quince mil pies cuadrados*; estaciones de gasolinas, diesel o ambos; usos y edificios accesorios; proyectos de carácter recreativos; actividades o usos temporeros, tales como carnavales, verbenas, fiestas patronales, actividades religiosas, entre otros. Véase Reglamento para Delegar Funciones en Áreas No Zonificadas (Reglamento de Planificación Núm. 27 de la Junta de Planificación), Reglamento Núm. 6517, Departamento de Estado, 19 de septiembre de 2002 Sec. 4.00 *et seq.*

([20]) En tiempos anteriores, el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación requería que se realizara una consulta de ubicación ante dicha agencia cuando se solicitaban posibles usos o variaciones de los terrenos en las áreas no zonificadas, en aquellos proyectos cuya naturaleza y magnitud tuviesen un impacto significativo en el ambiente físico, económico y social del sector en que se ubicasen. Esto cambió a partir de la aprobación del Reglamento para Delegar Funciones en Áreas No Zonificadas, *supra*. De ahora en adelante, los proyectos que requerirán presentar una consulta de ubicación previamente a la Junta serán aquellos en que ésta se haya reservado jurisdicción exclusiva, según lo dispuesto en dicho reglamento y la Ley de Municipios Autónomos, Ley Núm. 81 de 30 de agosto de 1991, según enmendada, 21 L.P.R.A. sec. 4001 *et seq.*

para velar por el cumplimiento de las leyes y los reglamentos de planificación. De igual forma, podrá hacer uso de aquellos remedios legales necesarios para velar por el cumplimiento efectivo de sus determinaciones. *A.R.P.E. v. Ozores Pérez*, supra, pág. 821.

■ El Art. 16 de la Ley Núm. 76 (23 L.P.R.A. sec. 71*o*), dispone que no podrá usarse ningún terreno o edificio, ni ninguna parte de éstos, a menos que el uso sea en conformidad con los reglamentos que hayan sido adoptados para el desarrollo y uso de terrenos, así como para la construcción y el uso de edificios, o de acuerdo con el permiso que haya sido otorgado por A.R.Pe. Dicho artículo consigna la prohibición de usos de terrenos o edificios sin el debido permiso de A.R.Pe.

■ De haber algún uso en violación a dichas leyes o reglamentos, el Art. 26 de la ley habilitadora de A.R.Pe. le permite a ésta interponer los recursos adecuados en ley para

> ... impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, usado o mantenido en violación [a las disposiciones de esta ley] o de cualquiera de los reglamentos que regulen la construcción y uso de edificios y pertenencias en Puerto Rico. 23 L.P.R.A. sec. 71y.

En ese mismo sentido, el Art. 28 de la Ley Núm. 76 dispone, además, que:

> *El Administrador [de A.R.Pe.]* o el Secretario de Justicia en los casos en los que así se solicite a nombre del Pueblo de Puerto Rico, o de cualquier propietario u ocupante de una propiedad vecina, que resultare o pudiera resultar especialmente perjudicado por cualesquiera de dichas violaciones, además, de los otros remedios provistos por ley, *podrá entablar recurso de interdicto, mandamus, nulidad o cualquier otra acción adecuada para impedir, prohibir, anular, vacar, remover o demoler cualquier edificio construido, o cualquier edificio o uso, hechos o mantenidos en violación de este Capítulo o de cualesquiera reglamentos adoptados conforme a la ley y cuya estructuración le haya sido encomendada a la Administración.*

Esta autorización no priva a cualquier persona a incoar el procedimiento adecuado en la ley para evitar infracciones a este Capítulo y a todos los reglamentos relacionados con la misma, para evitar cualquier estorbo (nuisance) o adyacente, o en la vecindad, de la propiedad o vivienda de la persona afectada. A estos fines, se provee el siguiente procedimiento especial:

(a) *Cuando, por persona o autoridad con derecho a ello, se presente petición jurada ante un juez del Tribunal de Primera Instancia de Puerto Rico* identificando un edificio o casa, rótulo o anuncio, alegando que el mismo está siendo construido, instalado, erigido, exhibido, mantenido, ampliado, reparado, trasladado, alterado, reconstruido, o usado, o demolido, *en violación de este Capítulo o de los reglamentos, mapas o planos aplicables especificando los actos constitutivos de dicha violación e identificando la persona o personas que estén cometiendo la violación en cuestión, el tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen inmediatamente*, bajo apercibimiento de desacato la obra, uso o instalación a que la petición se refiere, hasta tanto se ventila judicialmente su derecho. (Énfasis suplido.)[21]

■ En *A.R.Pe. v. Rodríguez*, 127 D.P.R. 793, 803 (1991), este Tribunal tuvo la oportunidad de definir el alcance del citado artículo. En dicha ocasión, concluimos que la razón de ser del Art. 28 de la Ley Núm. 76, *supra*, es "hacer viable, a la vez que vindicar, el cumplimiento de la Ley de A.R.Pe. y la reglamentación correspondiente". Se señaló, además, que dicho artículo faculta al Administrador de A.R.Pe., al Secretario de Justicia o a cualquier propietario u ocupante de una propiedad vecina que resulte perjudicado o pueda resultar perjudicado a obtener de cualquier juez del TPI una orden provisional o permanente para paralizar cualquier construcción o uso contrario a las leyes y reglamentos de planificación. Asimismo, concluimos que *el mecanismo que provee dicho articulado es estatutario, especial y sumario, limitado a la obtención de órdenes para la paralización inmediata, provisional o per-*

---

[21] Art. 28 de la Ley Núm. 76 de 24 junio de 1975 (23 L.P.R.A. sec. 72).

*manente de usos contrarios a la ley. A.R.Pᴇ. v. Rodríguez,* supra, págs. 808–809.

Así, por ejemplo, cuando se realicen actividades industriales livianas (I–1)([22]) tales como una estación de gasolina o un taller de venta de vehículos pesados en un área que se encuentre zonificada como una residencial cero (R–0),([23]) sin tener los permisos requeridos por ley, este articulado le provee legitimación al Administrador de A.R.Pᴇ. para que, a través de un recurso de interdicto o cualquier otro análogo, pueda solicitar la paralización del uso ilegal del que se trate.

■ Cuando se trate de una petición de *injunction* autorizado expresamente por dicho estatuto, es importante aclarar que éste no surge de la *jurisdicción de equidad de la corte,* en virtud del cual el tribunal ordena a una persona bajo apercibimiento de desacato que realice o deje de realizar un acto que infrinja o perjudique el derecho de otro. En esto se diferencia del *injunction* clásico u ordinario. *Tampoco se requiere alegación ni prueba de daños irreparables, y sólo la determinación de que el demandado ha violado las disposiciones de la ley. Pueblo v. A. Roig, Sucrs.,* 63 D.P.R. 18, 38–39 (1944). Véase, además, D. Rivé Rivera, *Recursos Extraordinarios,* 2da ed., Programa de Educación Jurídica Continua de la Universidad Intera-

---

([22]) La zona industrial (I–1) se establece para clasificar áreas para el establecimiento de las industrias livianas. Se persigue que los terrenos para industrias livianas se dediquen a tales fines, al tiempo que se excluyan en éstos el uso residencial y se incluyan ciertos usos comerciales. Véase Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 4844, Departamento de Estado, 16 de septiembre de 1992, Sec. 27.01.

([23]) La zona residencial cero es un distrito de baja densidad poblacional, con solar mínimo de ocho mil metros cuadrados, que se establece para facilitar el control de la expansión o crecimiento urbano; proteger la utilidad de las vías arteriales; preservar terrenos de alta productividad agrícola; proteger áreas que requieran la protección de su flora o fauna por su importancia económica, ecológica o científica, y proteger el disfrute y preservación de recursos de interés público tales como rasgos topográficos, bosques, arboledas, paisajes, formaciones geológicas, manantiales, quebradas, ríos, lagos, lagunas, fuentes naturales de agua, mangles, yacimientos minerales o playas. Véase Reglamento de Zonificación de Puerto Rico, *supra,* Sec. 10.01 *et seq.*

mericana de Puerto Rico, 1996, págs. 19–20.[24]

En fin, el Art. 28 de la Ley Núm. 76, *supra*, provee el mecanismo de *injunction* para hacer cumplir las leyes y los reglamentos de planificación. De este modo, al interponerse una petición de *injunction* al amparo del referido artículo, éste deberá evaluarse según los criterios establecidos en dicho estatuto. Por tal razón, cualquier persona legitimada para llevar a cabo dicha acción deberá traer a la consideración del tribunal los dos factores siguientes: (1) que existe una ley o reglamento que regula dicho uso o actividad, y (2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento.

## V

Los hechos que dieron lugar a la acción en el caso de autos se originaron el 23 de marzo de 2001, fecha de la presentación de la querella ante A.R.Pe. en contra del negocio del señor Rivera Morales. Luego de realizar varias inspecciones y tras haber constatado que el recurrido incumplía con las leyes y los reglamentos de planificación, A.R.P.e. presentó el 16 de noviembre de 2001 una petición de *injunction* ante el TPI, mediante la cual solicitó que se paralizara todo uso indebido del negocio. Es decir, el recurso se presentó sesenta y cinco días después de haberse aprobado por la Legislatura la Ley Núm. 129, *supra*, la cual enmendó la Ley Orgánica de la Junta de Planificación, *supra*, que autoriza a

---

[24] Para determinar la procedencia de un *injunction* ordinario, es necesario que los tribunales consideren los siguientes criterios: (1) la naturaleza de los daños que puedan ocasionarse a las partes de concederse o denegarse el *injunction*; (2) la irreparabilidad del daño o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne académica de no concederse el *injunction*, y (5) el posible impacto sobre el interés público del remedio que se solicita. Estos criterios son guías que dirigen al Tribunal al momento de decidir si la prueba ante su consideración justifica la expedición del recurso. Por lo tanto, la concesión del remedio sólo descansa en la sana discreción del juzgador. *P.R. Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200, 202 (1975).

la Junta a delegar en A.R.P.E. las facultades de adjudicación de permisos de usos y construcción, y desarrollo de terrenos en áreas no zonificadas.

A esa fecha, la referida Ley Núm. 129 no había entrado en vigencia debido a que la Junta de Planificación se encontraba en el proceso de aprobación del Reglamento para Delegar Funciones en Áreas No Zonificadas, *supra*. Ante esta circunstancia, al hacer su determinación de paralizar o no, el TPI concluyó que el remedio adecuado era la paralización de los procedimientos ante ese foro y concederle al señor Rivera Morales un plazo de cuarenta y cinco días desde que se implementara el correspondiente reglamento para que cumpliera con las disposiciones de la Ley Núm. 129, *supra*. Asimismo, autorizó al señor Rivera Morales a que operara su negocio sin que afectara las áreas colindantes ni el medio ambiente.

El TCA procedió a revocar dicha sentencia del TPI y le devolvió el caso para que evaluara en su determinación el balance de intereses en conflicto, luego del recurrido argumentar que si se paralizaba su negocio sus pérdidas serían irrecobrables. Al concluir esto, dicho foro citó como base lo resuelto por este Tribunal en *A.R.P.E. v. Ozores Pérez*, supra.[25] No estamos de acuerdo.

Según hemos reseñado en las secciones precedentes, A.R.Pe. es la encargada de aplicar y velar por el cumplimiento de sus propios reglamentos, y de los reglamentos de planificación que haya adoptado o adopte la Junta de Planificación de Puerto Rico para el desarrollo y uso de terre-

---

[25] La decisión original de dicho caso estableció que había que considerar el correspondiente balance de intereses en conflicto. Posteriormente, A.R.Pe. solicitó la reconsideración señalando que bajo su ley orgánica no era necesario considerar el balance de intereses entre dicha agencia y el demandado. Mediante resolución de 13 de febrero de 1986, este Tribunal eliminó aquellas partes de la opinión y de la sentencia que hacían referencia a la consideración del balance de intereses en conflicto. En ese sentido, establecimos que en toda petición de *injunction* que se inste al amparo del Art. 28 de la Ley Núm. 76, *supra*, debe seguirse el procedimiento establecido por dicho artículo.

nos, y para la construcción y el uso de edificios. Art. 5 de la Ley Núm. 76, *supra*, 23 L.P.R.A. sec. 71d. De acuerdo con lo anterior, lo fundamental en el presente caso es determinar si se estaba haciendo un uso ilegal de algún espacio de terreno. En otras palabras, si el negocio Johnny Trucking operaba contrario a lo establecido en los reglamentos de planificación o de uso de terrenos, y de cuyo cumplimiento A.R.Pe. tiene la obligación de velar.

Ante los hechos del caso, lo que procedía era que el TPI declarara con lugar el recurso de *injunction* presentado por A.R.Pe. debido a que el uso operado era distinto al uso aprobado. El señor Rivera Morales operaba un uso industrial de estacionamiento y mantenimiento de vehículos pesados cuando el uso aprobado por A.R.Pe. se refería a la operación de las oficinas profesionales de su negocio Johnny Trucking. Así también, la Junta de Planificación, la cual en ese momento tenía jurisdicción exclusiva para atender la realización de consultas de ubicación y concesión de permisos en áreas no zonificadas, tampoco había autorizado dicho uso.

Por lo tanto, la evaluación que correspondía hacer al TPI era si el uso de estacionamiento y mantenimiento de vehículos pesados requería el permiso de A.R.Pe. o de la Junta de Planificación, y si éste se obtuvo o no. Por tales razones, al haberse dado un uso distinto para el cual fue autorizado, debió ordenarse la paralización de las operaciones de dicho negocio.

Procede *revocar la resolución emitida por el Tribunal de Circuito de Apelaciones, que a su vez revocó la sentencia del Tribunal de Primera Instancia, y devolver el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de acuerdo con lo aquí dispuesto.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió sin opinión escrita. El Juez Presidente Señor Andréu García y el Juez Asociado Señor Rivera Pérez no intervinieron.