Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII-DJ2024-062C

| SERGEI DOLINSKY, OLGA DOLINSKY, JAIME BAREA FERNÁNDEZ, MARTA MORA ESTRELLA, KEVIN MARTÍNEZ DÍAZ, FRANCES NIEVES CASASNOVAS<br><br>Apelantes<br><br>v.<br><br>EDGAR TORRES MORALES, FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelados | TA2025AP00031 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Caso Núm. AG2024CV02200<br><br>Sobre: Injunction Preliminar y Permanente (Construcción Ilegal; Art. 14.1 Ley 161 de 1 de diciembre de 2009) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA EN RECONSIDERACIÓN**

En San Juan, Puerto Rico, a 18 de noviembre de 2025.

Examinada la *Moción de Reconsideración* presentada el 24 de octubre de 2025 por los señores Sergei Dolinsky, Olga Dolinsky, Jaime Barea Fernández, Marta Mora Estrella, Kevin Martínez Díaz y Frances Nieves Casasnovas (Sr. Dolinsky, Sra. Dolinsky, Sr. Barea Fernández, Sra. Mora Estrella, Sr. Martínez Díaz, Sra. Nieves Casasnovas, o, en conjunto, parte apelante), al amparo de la Regla 84 del Reglamento del Tribunal de Apelaciones[1], en el ejercicio de nuestra facultad revisora, declaramos la misma *Ha Lugar* y dejamos sin efecto nuestra *Sentencia* emitida el 4 de septiembre de 2025.

Por los fundamentos que exponemos a continuación, emitimos *Sentencia en Reconsideración* y **revocamos** la *Sentencia Final* emitida el 19 de mayo de 2025 por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI).

---

[1] Regla 84 del Reglamento *del Tribunal de Apelaciones*, según enmendada, In Re Aprob. Enmda. Reglamento TA, 2025 TSPR 42, 215 DPR _____ (2025).

**I.**

Acogemos los hechos plasmados el pasado 4 de septiembre de 2025 en la *Sentencia* emitida por este panel. Además, surge del expediente que, el 30 de enero de 2025, el señor Edgar Torres Morales (apelado), presentó *Moción de Desestimación*[2] en la que alegó que la demanda debe ser desestimada por falta de jurisdicción, en particular, debido a la ausencia de legitimación activa de los apelantes. Ante ese petitorio, el TPI señaló vista para el 31 de enero de 2025[3], con el fin de discutir la susodicha moción. Los días 4 y 11 de febrero de 2025, el foro apelado dictó unas *Minutas*, en la primera, aborda la discusión sobre la procedencia o no de la *Moción de Desestimación* y, la segunda, es un *Acta* sobre la vista ocular. Posteriormente, el 18 de marzo de 2025, el TPI notificó otra *Minuta*[4] sobre el estado de los procedimientos, en esta, concedió 5 días para enmendar la demanda y señaló vista evidenciaria para el 10 de junio 2025. En cumplimiento con lo ordenado por el TPI, el 18 de marzo de 2025, la parte apelante presentó la *Demanda Enmendada*[5], en la cual enumera los actos que les perjudican. Finalmente, el 20 de mayo de 2025, el TPI dictó la Sentencia Final aquí apelada sin la celebración de la vista.

Como mencionamos, el 24 de octubre de 2025, los apelantes presentaron *Moción de Reconsideración* ante esta *Curia* y adujeron:

> [...]  La Sentencia emitida por este Ilustre Foro establece en su página dieciséis (16) que "los apelantes tuvieron amplias oportunidades para presentar prueba al TPI sobre el alegado daño sufrido a causa de las obras supuestamente ilegales realizadas por el apelado".
> 4) Lo cierto es que en el caso ante el TPI no se celebró un desfile de prueba. El TPI no permitió un desfile de prueba en el cual los demandantes-apelantes pudiesen declarar sobre las alegaciones de su Demanda. Las vistas celebradas en la Sala del Tribunal de Primera Instancia se ciñeron a la discusión y argumentación sobre las mociones presentadas por las partes y a la inspección ocular ordenada por el Tribunal, en la cual ninguna de las partes declaró.
> 5) En el presente caso nunca estuvo en controversia el hecho de que el demandado apelado construyó ilegalmente y sin permiso alguno

---

[2] Entrada núm. 20 de Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Entrada núm. 21 SUMAC.
[4] Entrada núm. 38 SUMAC.
[5] Entrada núm. 39 de SUMAC.

en su predio de terreno, el cual es colindante con las propiedades de los demandantes. Tampoco debe haber duda en cuanto al hecho de que una construcción ilegal, sin permiso alguno, afecta adversamente los intereses de la comunidad, en especial aquellos de los vecinos colindantes a los que se le obstruye la visibilidad a hacia la playa con un muro. El TPI se circunscribió a llevar a cabo una inspección ocular del área y descansó en las mociones presentadas por las partes y en dicha inspección ocular para desestimar el caso, sin haber escuchado testimonio alguno, ni aquilatada prueba sobre la forma y manera en la cual los demandantes han sido afectados.

6) El 18 de marzo de 2025 la parte demandante-apelante presentó ante el TPI una DEMANDA ENMENDADA (Véase Apéndice - Entrada #39 del SUMAC). En síntesis, dicha demanda enmendada especificó en forma detallada y particularizada, la forma y manera en la cual los demandantes-apelantes se ven directamente afectados por las obras de construcción ilegal efectuadas por la parte demandada-apelada. (Véase Apéndice - Entrada #39 del SUMAC).

También, argumentaron que *"la letra del Artículo 14.1, supra, provee un mecanismo interdictal extraordinario de carácter estatutario y sumario que se limita a la obtención de órdenes para provocar la paralización inmediata, provisional o permanente de usos o actos contrarios a la ley. La norma reconoce que un injunction estatutario es independiente de un injunction tradicional [...] Según la interpretación normativa, al momento de presentarse una petición de injunction de esta naturaleza, "[no] se requiere alegación ni prueba de daños irreparables, [sino] solo la determinación de que el demandado ha violado las disposiciones de la ley". ARPe v. Rivera, 159 DPR 429, 444 (2003). A su vez, y en referencia particular al interdicto estatutario contemplado en el Artículo 14.1 de la Ley 161-2009, supra, la parte promovente del mismo debe acreditar ante el foro competente que: 1) que existe una ley o reglamento que regula el uso o actividad denunciada y; 2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento. ARPe v. Rivera, supra, pág. 4451; J. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Estados Unidos, Pubs. JTS, 2011, T. V, pág. 1672".* Así pues, nos solicitan que esta Curia reconsidere la Sentencia emitida el 9 de octubre de 2025.

## II.

### -A-

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico,* (Ley Núm. 161-2009[6]) fue promulgada para establecer el nuevo marco legal y administrativo que habría de guiar la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos por parte del Gobierno de Puerto Rico. Su objetivo es transformar el sistema de permisos de Puerto Rico de modo que el mismo sea uno más transparente, ágil, confiable y eficiente[7]. Mediante dicha ley se creó la OGPe, entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relativos al desarrollo y el uso de terrenos. Art. 2.5 de la Ley para la Reforma del Proceso de Permisos de Puerto Rico[8].

La Ley 161-2009, en su Capítulo XIV, permite la presentación de recursos extraordinarios **ante el Tribunal de Primera Instancia a los fines de solicitar la paralización y demolición de obras construidas sin permisos. Además, regula lo concerniente a la celebración de vistas**[9]. A esos efectos, el Art. 14.1 de la Ley 161-2009, dispone lo siguiente:

> ***Artículo 14.1. — Recursos extraordinarios para solicitar revocación de permisos, paralización de obras o usos no autorizados, demolición de obras.***
> *La Junta de Planificación, así como cualquier Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público **o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado**, podrá presentar una acción de **injunction,** mandamus, sentencia declaratoria, **o cualquier otra acción adecuada para solicitar**: 1) **la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa**; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.*

---

[6] 23 LPRA sec. 9011 *et seq.*
[7] *Íd.,* Exposición de Motivos de la Ley Núm. 161-2009.
[8] 23 LPRA sec. 9012d.
[9] 23 LPRA secc. 9024.

> *Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, Entidad Gubernamental Concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia. Una vez habiéndose presentado el recurso extraordinario al amparo del presente Artículo, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y **cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires.***
>
> *El Tribunal de Primera Instancia **deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.***
>
> *En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el Tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.*

**-B-**

Los criterios dispuestos por el Artículo 14.1 de la Ley 161-2009, *supra,* toda persona legitimada para valerse del mismo deberá establecer ante el tribunal competente lo siguiente: 1) que existe una ley o reglamento que regula el uso o actividad denunciada y; 2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento[10]. Dada su naturaleza, el injunction estatutario es independiente del injunction tradicional y, en consecuencia, generalmente exento de las exigencias legales que rigen a este[11]. La doctrina interpretativa reconoce que los requisitos para la ejecución del injunction tradicional son más rigurosos que los aplicables a aquel de índole estatutario[12]. Ello obedece a que, en esencia, el interdicto tradicional se adoptó del sistema de equidad inglés para disponer de situaciones para cuya atención no existe remedio adecuado en ley[13].

Por su parte, el injunction estatutario tiene su origen en un mandato legislativo expreso[14]. De ahí que, contrario al interdicto tradicional, su concesión "requiere un tratamiento especial, enmarcado en un escrutinio

---

[10] *ARPe v. Rivera,* 159 DPR 429, 443-444 (2003).
[11] *Next Step Medical v. Bromedicom et al,* 190 DPR 474 (2014).
[12] *Íd.*
[13] *Íd; ARPe v. Rivera, supra.*
[14] *ARPe v. Rivera, supra.*

judicial más acotado"[15]. Así, a tenor con la doctrina vigente, al interponerse una petición de injunction de esta naturaleza, "[no] se requiere alegación ni prueba de daños irreparables, [sino] solo la determinación de que el demandado ha violado las disposiciones de la ley[16]". Por igual, y en el contexto específico del empleo del mecanismo interdictal establecido en el Art. 14.1 de la Ley 161- 2009, supra, toda persona legitimada para valerse del mismo deberá establecer ante el tribunal competente lo siguiente: 1) que existe una ley o reglamento que regula el uso o actividad denunciada y; 2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento[17].

### III.

Atendida la *Moción de Reconsideración* presentada oportunamente por los apelantes, nos encontramos en posición de evaluar el escrito. Así pues, nos corresponde determinar si procede acoger la *Moción de Reconsideración* y revocar la sentencia que emite el TPI al declarar *Ha Lugar* la *Moción de Desestimación* presentada por el apelado, sustentada en que la parte apelante no poseía legitimación activa para realizar el reclamo, en específico, porque no demuestra al foro apelado que tiene un interés propietario y, o, personal, el cual se afecta por la construcción. Veamos.

La parte apelante presenta *Demanda*[18] el 23 de diciembre de 2024, solicita *la paralización de obras y usos no autorizados y la demolición de obras a tenor con el Art. 14.1*[19]. No existe controversia que la parte apelante son dueños residentes y /o titulares colindantes del señor Edgar Torres Morales (apelado). Arguye que el apelado, realiza obras de construcción ilegal, sin contar con los debidos permisos de Ley, y dicha construcción se ilustra en los anejos incluidos en la *Demanda Enmendada*[20], a saber:

---

[15] *Next Step Medical v. Bromedicom et al, supra*, pág. 497.
[16] *ARPe v. Rivera, supra,* pág. 444.
[17] *ARPe v. Rivera, supra,* pág. 445.
[18] Entrada núm. 1 de SUMAC.
[19] 23 LPRA secc. 9024.
[20] Entrada núm. 39 de SUMAC y se incluyó un estudio de título el cual recoge condiciones restrictivas a saber: **Queda expresamente prohibida la utilización de los solares y/o estructuras residenciales con propósitos y/o fines comerciales, industriales u**

a. Construcción de un muro de concreto y bloques en la parte frontal de la propiedad, que da hacia calle de acceso;

b. Movimiento de terreno para construcción de muro de concreto mencionado en el inciso "a" anterior;

c. Construcción de un pedestal en concreto para contador de servicio de energía eléctrica;

d. Construcción de una estructura en madera bajo la cual albergan un arrastre tipo "camper tráiler".

e. Ex[tr]acción de terreno y excavación de una trinchera en la zona marítimo terrestre para algún propósito el cual se desconoce, sin los debidos permisos de OGPE y ni autorización del Departamento de Recursos Naturales de PR (DRNA) que son los custodios de la zona marítimo terrestre.

f. Construcción de una estructura de madera[21]

En respuesta, el 30 de enero de 2025, el apelado presenta *Moción de Desestimación* y solicita que se proceda a archivar el caso por falta de jurisdicción, debido a la ausencia de legitimación activa de la parte apelante, porque no logra establecer claramente en qué medida está adversamente afectada conforme requiere el Art. 14.1 de la Ley Núm. 161-2009.

El análisis gira en torno a si la determinación del TPI incidió al acoger la moción de desestimación basada en aplicar los criterios del *injunction* tradicional al caso de autos. Como menciona nuestro Tribunal Supremo en *Díaz Vázquez v. Colón Peña*, 214 DPR 1135, 1147, 1148 (2024), al examinar el Art. 14.1 de la Ley Núm. 161-2009:

El *injunction* estatutario para ordenar la paralización o demolición de un uso u obra o la revocación de un permiso al amparo del Art. 14.1 de la Ley Núm. 161-2009, *supra*, no se rige por los requisitos y criterios rigurosos que aplican al *injunction* tradicional en virtud de

---

oficinas comerciales o profesionales. **En dichos solares o estructuras no se podrá operar negocio o profesión de tipo alguno y específicamente queda prohibida la operación de casa de hospedajes para estudiantes y/o personas ajenas al núcleo familiar. No se permite la construcción de estructuras residenciales multifamiliares o edificaciones de apartamentos. Ninguna construcción de estructuras, muros o verjas en el inmueble podrá interrumpir el libre flujo de las aguas pluviales**. [...]Queda **expresamente prohibida la construcción de viviendas de madera**. Sera obligación construir vivienda en las cuales el material a utilizarse sea el hormigón. Las estructuras residenciales no podrán ser sometidas al Régimen de Propiedad Horizontal. No se podrá operar en dicho inmueble negocios, comercios, restaurantes o locales de expendio de bebidas alcohólicas. **Término de las condiciones restrictivas: 25 años. Constituidas mediante la Escritura # 28, otorgada en Mayagüez, el 14 de marzo del 2002 ante el notario Luis Roberto Santos. Inscrita el día 23 de agosto del 2022 en el Sistema Karibe, finca # 8397 de Rincón, inscripción 2ª.**

[21] *Íd.*

la Regla 57 de Procedimiento Civil, *supra*, ni tampoco se le pueden oponer las defensas tradicionales de la equidad.

[...]

En otras palabras, este remedio- al ser de carácter estatutario y no surgir de la equidad- procede cuando se demuestre que la obra o el uso no cuneta con autorizaciones y los permisos correspondientes o que se realizó en contravención a lo dispuesto en el permiso concedido. En fin, aunque este procedimiento especial provee para un remedio estatutario que tiene cierta afinidad con un *injunction* preliminar, no le aplica el mismo rigor de ese recurso ni tampoco tiene la finalidad de un *injunction* permanente.

Establecido lo anterior, nos corresponde aplicar la normativa que instaura que, *los tribunales están obligados a tomar como ciertos [...] todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente*[22]*,* cuando pasamos juicio sobre la demanda original y la demanda enmendada con sus anejos, *y a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor,* colegimos *que la demanda es suficiente para constituir una reclamación válida*[23].

Según nuestro examen, concluimos que procede acoger la *Moción de Reconsideración* presentada ante este foro por la parte apelante. Determinamos que, los tres errores señalados en el recurso de *Apelación* fueron cometidos, lo cual privó a la parte apelante presentar prueba en una vista para que se atendiera su reclamo debidamente bajo el Art. 14.1 de la Ley 161, 2009.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte de este dictamen, dejamos sin efecto la Sentencia que emitimos el 9 de octubre de 2025, **revocamos** la *Sentencia* apelada y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos.

Notifíquese.

---

[22] *Díaz Vázquez, et. al. v Colón Peña et al.* 214 DPR 1135, 149 (2024), citando a *Eagle Security v. Efrón Dorado et al,* 211 DPR 70, 84 (2023)*, Cobra Acquisitions v Mun Yabucoa et al.* 210 DPR 384, 396 (2022), *González Méndez v Acción Social et al.,* 196 DPR 213, 234 (2016).
[23] *Eagle Security v. Efrón Dorado et al, supra.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. El juez Adames Soto disiente y hace constar lo siguiente:

Disiento respetuosamente del curso decisorio elegido por el Panel al cual estoy adscrito por dos razones: 1) juzgo que debimos haber permitido a la parte apelada oponerse a la *Moción en solicitud de reconsideración* instada por la parte apelante, antes de acogerla; 2) reitero los fundamentos de derecho expuestos en la Sentencia que fue reconsiderada, advirtiendo que el foro apelado acertó al poner el acento del requerimiento dimanante del Art. 14.1 de la Ley Núm. 161-2009, en términos de que, cuando una persona privada insta la causa de acción allí concebida **necesariamente tiene que demostrar tener un interés propietario o personal que podría verse adversamente afectado**, lo que en este caso no se pudo demostrar, a pesar del traslado del Tribunal al lugar de los hechos, a través de una vista ocular. En definitiva, hubiese denegado la petición de reconsideración instada ante nosotros por la parte apelante.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones