Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| LUMA ENERGY SERVCO, LLC<br><br>Apelante<br><br>v.<br><br>LUIS ALBERTO RIVERA RIVERA, ET ALS<br><br>Apelados | KLAN202300090 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2022CV06844 (907)<br><br>Sobre: Procedimiento Especial al Amparo del Artículo 14.1 de la Ley núm. 161-2009 |

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

**Rivera Torres, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de febrero de 2023.

Comparece ante este tribunal apelativo Luma Energy Servco, LLC (LUMA o la parte apelante) mediante el recurso de apelación de epígrafe y nos solicita que revoquemos una *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan (el TPI) el 5 de diciembre del 2022, archivada en autos ese mismo día. Mediante dicho dictamen, el foro primario declaró *No Ha Lugar* a la solicitud de *injunction* estatutario en virtud del Artículo 14.1 de la Ley núm. 161-2009. En consecuencia, desestimó la demanda instada por la parte apelante.

Por las razones que expondremos a continuación, se confirma la *Sentencia* apelada.

**I.**

El 1 de agosto de 2022 la parte apelante presentó una demanda de *injunction* estatutario al amparo del Artículo 14.1 de la Ley núm. 161-2009, conocida como "Ley para la Reforma del Proceso de Permisos de Puerto Rico". En esencia, alegó que el Sr.

Luis Alberto Rivera Rivera y su esposa, la Sra. Dalline Candelario Ruiz (el matrimonio Rivera-Candelario) obtuvieron, de manera "incorrecta", un permiso de construcción expedido por el Municipio de San Juan (el Municipio). Argumentaron que la construcción que se está realizando invade la servidumbre constituida a favor de la Autoridad de Energía Eléctrica (AEE), por lo que procede su demolición.

El matrimonio Rivera-Candelario contestó la demanda e indicó, entre sus defensas afirmativas, que la actuación de Luma es una "selectiva, discriminatoria o de persecución." Asimismo, se expuso que cuentan con un permiso de construcción vigente expedido por la Oficina de Permisos del Municipio (núm. 2019-277191-PCOC-021128. Se arguyó que cuando adquirieron la propiedad en el 2019 ya existía la estructura por la que se reclama alguna violación. Más aún, expresaron que "Ni el paso ni el acceso han sido ni les serán prohibidos y [e]stos tendrán acceso según fuere necesario."[1]

Luego de varios trámites procesales, que se hacen innecesarios consignar, el 9 de noviembre de 2022 se celebró la vista de *injunction* en la cual, luego de una extensa argumentación, el tribunal apercibió a las partes que se estipuló el permiso de construcción; así como la servidumbre. A su vez, les advirtió que, a su entender, lo que está ante su consideración es una controversia de derecho y aún más, expresó que el Artículo 14.1 de la Ley núm. 161-2009 "no es el indicado para hacer valer una servidumbre."[2] Así las cosas, el foro apelado concedió a ambas partes un término para someter por escrito sus respectivas argumentaciones.

Cumplida la orden, y analizados los escritos, el TPI emitió el dictamen apelado en el cual consignó veinte (20) determinaciones de

---

[1] Véase el Apéndice del Recurso, a la pág. 52.
[2] *Íd.*, a la pág. 63.

hechos y concluyó que el recurso especial dispuesto en la Ley núm. 161-2009 no es el mecanismo apropiado para impugnar la obra de construcción y solicitar su demolición. Además, el foro *a quo* aclaró el alcance de la *Sentencia* dictada y expresó lo siguiente:[3]

> Por último, aclaramos que el alcance de esta Sentencia se limita a determinar la improcedencia del recurso de injunction estatutario en virtud de la Ley Núm. 161-2009. Por imperativo jurisdiccional, el Tribunal no determinó ni entró en los méritos en cuanto a los planteamientos de la parte demandante respecto al derecho de servidumbre- ya sea una de naturaleza legal o privada- y su presunta invasión por la parte demandada. Similarmente, lo aquí resuelto tampoco tiene el efecto de proscribir cualquier acción civil en el trámite ordinario correspondiente, como pudieran ser la acción confesoria de servidumbre, sentencia declaratoria, ni la solicitud de un remedio provisional de sentencia bajo la Regla 56 de Procedimiento Civil, *supra*, que pudiera ventilarse en tal procedimiento ordinario o cualquier otro mecanismo que fuera procedente." [notas al calce omitidas]

Inconforme, LUMA solicitó la reconsideración de dicho dictamen. El 3 de enero de 2023 el TPI declaró *No Ha Lugar* el petitorio.

Aún insatisfecha, la parte apelante acude ante este foro apelativo imputándole al foro de primera instancia la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONCLUIR QUE LA PARTE DEMANDANTE NO LOGRÓ DEMOSTRAR QUE PROCEDE LA CONCESIÓN DEL INJUNCTION ESTATUTARIO PARA REVOCAR EL PERMISO DE CONSTRUCCIÓN EN ATENCIÓN A LOS CRITERIOS PUNTUALES ESTABLECIDOS EN EL ART. 14.1 DE LA LEY NÚM. 161-2009.

El 2 de febrero de 2023 dictamos una *Resolución* concediendo a la parte apelada el término de treinta (30) días para expresarse. El 23 de febrero de 2023 se presentó el alegato en oposición intitulado *Moción en Cumplimiento de Orden*. Así, nos damos por cumplidos y decretamos perfeccionado el recurso.

Analizados los escritos y el expediente apelativo; así como estudiado el estudiado aplicable, procedemos a resolver.

---

[3] Véase el Apéndice del Recurso, a las págs. 25-26.

**II.**

La Ley núm. 161-2009, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, 23 LPRA sec. 9011*et seq.*, se aprobó con el fin de establecer el marco legal y administrativo que regiría en la solicitud, evaluación, concesión y denegación de permisos de construcción que inciden en el desarrollo económico del Estado Libre Asociado de Puerto Rico. Posteriormente, esta fue enmendada por la Ley núm. 151-2013 con el propósito, entre otros, de reestructurar la OGPe y así cumplir con la meta de agilizar los procedimientos en el trámite de concesión y denegación de permisos, pero en particular, garantizar y propiciar la participación ciudadana y el acceso a los foros adjudicativos. Por ello, se eliminó la Junta Revisora (foro adjudicativo adicional como paso previo a solicitar revisión ante los tribunales) y se restituyó la aplicación de la Ley de Procedimientos Administrativos Uniformes. Exposición de Motivos de la Ley núm. 151-2013.

En lo aquí pertinente, el Artículo 9.10 de la Ley núm. 161-2009, 23 LPRA sec. 9019i, dispone:

> **Se presume la corrección y la legalidad** de las determinaciones finales y **de los permisos expedidos por la Oficina de Gerencia de Permisos**, por el Municipio Autónomo con Jerarquía de la I a la V y por los profesionales autorizados. **No obstante, cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento** o denegación de la determinación final **o del permiso**, o en aquellos casos en que **la estructura represente un riesgo a la salud o la seguridad, a condiciones ambientales o arqueológicas**, la determinación final emitida y **el permiso otorgado por la Oficina de Gerencia de Permisos**, por el Municipio Autónomo con Jerarquía de la I a la V o por el profesional autorizado, **deberá ser revocado**. La estructura **se podrá modificar, conservar o demoler, solo después de que un tribunal competente así lo determine** y **siguiendo con el procedimiento judicial establecido en las secs. 9024 a 9024e** de este título, además de cumplir con el debido proceso de ley. [...] (Énfasis nuestro)

A su vez, el Artículo 14.1 del estatuto, 23 LPRA sec. 9024, al que hace referencia el precepto anterior dispone:

> La Junta de Planificación, así como cualquier entidad gubernamental concernida, Municipio Autónomo con

> Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o **una persona** privada, natural o **jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado**, **podrá presentar una acción de injunction**, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: (1) **la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa**; (2) la **paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes**, **o incumpliendo con las disposiciones y condiciones del permiso otorgado**; (3) **la paralización de un uso no autorizado**; (4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.
>
> **Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación**, entidad gubernamental concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, **una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia**. Una vez habiéndose presentado el recurso extraordinario al amparo de esta sección, **la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires**.
>
> El Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.
> [...] (Énfasis nuestro)

Debido a su naturaleza, el *injunction* estatutario es independiente del *injunction* tradicional y, por consiguiente, generalmente exento de la normativa aplicable a este último. *Next Step Medical v. Bromedicon et al.*, 190 DPR 474 (2014). Ello, porque los requisitos del *injunction* tradicional son, de ordinario, más rigurosos que los exigidos para el *injunction* estatutario. *Next Step Medical v. Bromedicon et al.*, supra; *CBS Outdoor v. Billboard One, Inc.*, 179 DPR 391, 409 (2010). El *injunction* tradicional tiene su origen en la equidad y va dirigido esencialmente a atender situaciones donde no existe otro remedio adecuado en ley para atender los perjuicios que enfrenta una persona, mientras que el interdicto estatutario proviene de un mandato legislativo expreso.

Es por ello, que la concesión de un *injunction* estatutario requiere un tratamiento especial, enmarcado dentro de un examen o escrutinio judicial más acotado. *Next Step Medical v. Bromedicon*, supra, a la pág. 497.

El procedimiento especial provisto por el Artículo 14.1 de la Ley núm. 161-2009, al igual que otros interdictos estatutarios, es un mecanismo establecido por un estatuto, independiente, **sumario y limitado**. *ARPe v. Rivera*, 159 DPR 429, 443 (2003); *ARPe v. Rodríguez*, 127 DPR 793 (1991).[4] **Una vez se solicita correctamente el procedimiento especial**, el tribunal expedirá una orden de paralización provisional hasta que se ventile judicialmente **el derecho de la parte que lo invocó**. Nótese, sin embargo, que **su concesión ha de evaluarse a la luz de la letra de este artículo** y su jurisprudencia interpretativa. *Íd.*

Por último, es norma trillada que, en ausencia de error, prejuicio o parcialidad, los tribunales apelativos no intervendrán con las determinaciones de hechos, con la apreciación de la prueba, ni con la adjudicación de credibilidad efectuadas por el Tribunal de Primera Instancia. *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). Esta norma de deferencia judicial descansa en que el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran; factores que van formando gradualmente en su conciencia la convicción sobre la verdad de lo declarado. *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 68 (2009).

---

[4] La jurisprudencia citada se refiere al Artículo 28 de la Ley núm. 76 de 24 de junio de 1975, el cual fue derogado mediante la aprobación de la Ley núm. 161-2009, *supra*. Ante la ausencia de jurisprudencia que trate el Artículo 14.1 de la Ley 161-2009, según enmendado, y debido a que se trata de la figura antecesora del actual Artículo 14.1, *supra*, que procuraba esencialmente los mismos objetivos, acudimos a dicha jurisprudencia interpretativa.

**III.**

En esencia, la parte apelante argumentó que el TPI erró al concluir que el remedio establecido en el Artículo 14.1 de la Ley núm. 161-2009 no es el adecuado para atender los hechos del presente caso. Alegó que la construcción que se está llevando a cabo ocupa parte de la servidumbre a favor de la AEE, por lo cual se requería un endoso de dicha agencia para realizar dicha construcción.[5] Así pues, LUMA entiende que la certificación sometida al Municipio es "incorrecta o falsa", ya que en esta se indicó que el proyecto cumple con los requisitos de ley.

Como indicamos, la *Solicitud de Injunction* fue instada al amparo del Artículo 14.1 de la Ley núm.161-2009, *supra,* el cual dispone, en lo aquí pertinente, que podrá ser presentada por una persona jurídica **que tenga un interés propietario que podría verse adversamente afectado** con el fin de obtener la **revocación** de un permiso otorgado, **cuya solicitud se haya hecho utilizando información incorrecta o falsa**. De igual manera, expusimos en el derecho precedente que al ser este *injunction* un mecanismo establecido por un estatuto de carácter independiente, sumario y limitado, su concesión **requiere un tratamiento especial** enmarcado dentro de un escrutinio judicial más limitado. En consecuencia, para su expedición la parte apelante tenía que demostrar específicamente cuál fue la información incorrecta o falsa suministrada por el matrimonio Rivera-Candelario y que el permiso fue expedido utilizando la misma. Lo cual, como más adelante explicaremos, evidentemente no ocurrió en el presente caso.

Recordemos que el TPI, en el dictamen impugnado, reconoció que en el propio permiso de construcción se hizo la advertencia de

---

[5] El Artículo 1 de la Ley núm. 143 de 20 de julio de 1979, según enmendada, mejor conocida como la "Ley de Servidumbres Legales", en lo aquí pertinente, establece que tienen carácter de servidumbres legales, continuas y aparentes las servidumbres de servicio público de paso de energía eléctrica.

que la adjudicación del mismo no tenía el propósito ni el alcance de validar o anular cualquier restricción privada, incluyendo servidumbres en equidad o prohibiciones que resulten inconsistentes con el mismo.[6] Al analizar dicha condición, el foro primario razonó que el Municipio admitió que el permiso pudiera contravenir los derechos de alguna parte respecto a las servidumbres, "... pero ello no implica por sí solo que el permiso que así lo haga sea nulo o deba ser revocado, ni mucho menos que se indujo a error a la entidad gubernamental al emitirlo al proveer información "falsa o incorrecta"."[7] Añadió el foro apelado que "... del propio permiso expedido se orienta y advierte que cualquier parte afectada pudiera ir en contra de la parte que recibió el permiso para vindicar su derecho **por medio de la acción correspondiente**. Es decir, surge del propio permiso de construcción que la entidad gubernamental reconoció la posibilidad de que exista alguna servidumbre que grave la propiedad, **pero que ello se trata de un asunto que se encuentra fuera del alcance de su revisión a los fines de expedir el permiso**."[8]

En este sentido, cualquier irregularidad en el análisis de los documentos o algún supuesto error del ente gubernamental al otorgar el permiso de construcción, no son fundamentos adecuados para la expedición de este recurso. Resultaba necesario que LUMA cumpliera con los requisitos impuestos en la disposición estatutaria invocada en su solicitud de *injunction,* lo que no hizo. En este asunto, recalcamos que la parte apelante fundamentó su acción **solo en el Artículo 14.1 de la Ley núm. 161-2009**. Advertimos, además, que en la Vista de Interdicto Preliminar, se falló en pasar

---

[6] Véase el Apéndice del Recurso, a la pág. 23.
[7] *Íd.*
[8] *Íd.* Énfasis en el original y nuestro. Cita omitida.

prueba sobre elementos exigidos por nuestro ordenamiento jurídico para poder concederle otro remedio.

Asimismo, precisa enfatizar que el Artículo 9.1 de la Ley núm.161-2009 establece una presunción *iuris tantum* a favor de la acción del Municipio, a saber, se presume la corrección y la legalidad de las determinaciones finales y de los permisos expedidos por la Oficina de Permisos del Municipio. Presunción que a todas luces no fue rebatida por LUMA debido a que reiteramos que esta tenía que demostrar con prueba fehaciente la información falsa incluida en la solicitud del permiso de construcción según requiere el Artículo 14.1, *supra.* Al respecto, en el recurso LUMA incluyó el Permiso de Construcción, pero no así la solicitud presentada por el matrimonio Rivera-Candelario ante el Municipio. De este documento no surge que el proponente tenga que especificar si la propiedad está gravada por alguna servidumbre o si la construcción propuesta afecta la misma, de esta existir. Por lo cual, como explicamos, para atender este asunto, el documento contiene la advertencia que previamente reseñamos.

En virtud de todo lo antedicho, no erró el foro apelado al concluir que la parte apelante utilizó incorrectamente el mencionado procedimiento especial para impugnar el permiso otorgado. Se hace menester destacar que el Reglamento Núm. 7282 intitulado *Reglamento de Servidumbres para la Autoridad de Energía Eléctrica* del 25 de enero de 2007 dispone en la Sección VI intitulada *Uso y disfrute de las servidumbres*, su Artículo D, como sigue:

> 1. La Ley Núm. 143, del 20 de julio de 1979, según enmendada, dispone que cualquier persona que construya, instale o ubique cualquier estructura en las servidumbres sin el previo consentimiento escrito de la Autoridad, incurre en un delito menos grave y puede ser sancionada con pena de reclusión que no excederá de seis meses o multa de $500 ó ambas penas a discreción del Tribunal.
>
> 2. Las servidumbres se tienen que mantener libres de estructuras o edificaciones, tanto sobre o bajo el terreno. No se pueden construir estructuras o

edificaciones sobre las servidumbres, ya que esto es una violación a los derechos de servidumbre de la Autoridad.

3. La Autoridad, mediante notificación escrita al propietario, concede treinta días para que éste remueva la estructura o edificación que se encuentra en la servidumbre.

4. Luego de la Autoridad haber requerido al propietario que remueva la estructura o edificación ubicada sobre o bajo el terreno que forma parte de la servidumbre, mediante una notificación escrita, concediéndole el término de 30 días a partir del recibo de dicha notificación, y que el propietario no las haya removido, la Autoridad, de entenderlo necesario, puede, a través del supervisor de área correspondiente, utilizar el procedimiento judicial provisto en la Ley Núm. 140 del 23 de julio de 1974, según enmendada, Ley sobre Controversias y Estados Provisionales de Derecho.

5. En caso de que la Autoridad le haya requerido al propietario la remoción de la estructura o edificación que invade la servidumbre, **por medio de la notificación y el procedimiento bajo la Ley Núm. 140,** ante, y el propietario no haya realizado la acción requerida, **la Autoridad puede ejercer las acciones judiciales correspondientes** dirigidas a que se cumpla con lo establecido en este Reglamento.

6. **Previa autorización del tribunal**, la Autoridad está autorizada a derribar o demoler cualquier estructura o edificación que se construya, instale o ubique en violación a los términos de este Reglamento. En caso de emergencia o peligro inminente a la vida o propiedad, la Autoridad puede derribar o demoler estructuras o edificaciones sin la autorización del Tribunal. Además, se le puede imponer el costo de remoción al propietario, si éste no remueve la estructura o edificación dentro del término concedido. (Énfasis nuestro)

En conclusión, no procede aplicar a la situación de autos el mecanismo dispuesto en el Artículo 14.1 de la Ley núm. 161-2009. Como bien indicara el foro apelado, lo aquí resuelto no tiene el efecto de proscribir cualquier acción civil en el trámite ordinario correspondiente, según dispone el Reglamento antes citado, para hacer valer la servidumbre a favor de la parte apelante. En ausencia de error, prejuicio o parcialidad, procede confirmar el dictamen apelado.

En fin, el error señalado no fue cometido por el TPI.

**IV.**

Por los fundamentos anteriormente expuestos, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos disiente porque, dando por ciertas las alegaciones fácticas de la acción de referencia, como es nuestra obligación al evaluar una moción de desestimación por las alegaciones, claramente surge que estamos ante una causa de acción viable, ya sea bajo el Artículo 14.1 de la Ley 161-2009 o bajo otras disposiciones de nuestro ordenamiento que protegen y reglamentan lo relacionado con las servidumbres de la Autoridad de Energía Eléctrica. Por tanto, el TPI no debió haber desestimado la demanda y, en vez, debió analizar si procedería algún remedio de probarse los hechos alegados. La contestación es en la afirmativa, pues la demandante tiene un interés adecuado en el asunto objeto de la demanda (pues está encargada de operar la red de distribución de la Autoridad) y se alegó que la construcción objeto de la demanda, independientemente de que cuente con un permiso, es ilegal por infringir una servidumbre diseñada para asegurar la capacidad de las entidades pertinentes para mantener adecuadamente nuestra infraestructura eléctrica.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones