EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| B. Billboard BG, LLC<br><br>Peticionario<br><br>v.<br><br>Out of Home Media, LLC<br><br>Recurrido | Certiorari<br><br>2024 TSPR 51<br><br>213 DPR ___ |

Número del Caso:  AC-2023-0115


Fecha:  22 de mayo de 2024


Tribunal de Apelaciones:

     Panel I


Representantes legales de la parte peticionaria:

     Lcdo. Daniel R. Martínez Avilés
     Lcda. Michelle Rodríguez Gerena


Representante legal de la parte recurrida:

     Lcdo. Luis F. Juarbe Jiménez


Materia:  Resolución de Sala Especial de Despacho con Voto Particular Disidente.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

INTEGRACIÓN DE SALA ESPECIAL

ORDEN

En San Juan, Puerto Rico, a 12 de abril de 2024.

Por estar igualmente divididos los votos de los miembros de esta sala, se constituye una Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez, para atender el caso AC-2023-0115, B Billboard BG, LLC v. Out of Home Media.

Lo decretó y firma,

Maite D. Oronoz Rodríguez
Jueza Presidenta

CERTIFICO:

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| B. Billboard BG, LLC<br><br>Peticionario<br><br>v.<br><br>Out of Home Media, LLC<br><br>Recurrido | AC-2023-0115 |

Sala Especial de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez

RESOLUCIÓN

En San Juan, Puerto Rico, a 22 de mayo de 2024.

Examinada la primera *Solicitud de reconsideración*, no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto particular disidente, al cual se unió la Jueza Presidenta Oronoz Rodríguez.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| B-Billboard BG, LLC | | |
| Peticionaria | | |
| v. | AC-2023-0115 | |
| Out of Home Media, LLC | | |
| Recurrida | | |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ, al cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 22 de mayo de 2024.

En esta ocasión, resultaba indispensable que este Tribunal reconociera la capacidad que tiene un demandante al cual la Asamblea Legislativa le concedió legitimación activa estatutariamente para entablar su causa de acción ante los tribunales. Ello, con el propósito de ilustrar y reafirmar que, en este tipo de escenarios, la evaluación sobre si cierta parte está debidamente legitimada no debe ceñirse a los requisitos ordinarios de la legitimación activa, sino al cumplimiento de lo dispuesto en la ley correspondiente.

Empero, al enfrentarse a esta controversia, una Sala Especial de este Tribunal declinó recomendar al Pleno expedir y,[1] con ello, se mantiene en vigor un dictamen

---

[1] La votación entre los miembros de la Sala de Despacho I quedó igualmente dividida con respecto al curso de acción a tomar para atender el recurso presentado por la parte

recurrido contrario a Derecho que le **exige a los demandantes mucho más de lo debido en cuanto a la doctrina de legitimación activa estatutaria** se refiere. Toda vez que considero patentemente erróneo que a los demandantes se le cierren las puertas del Poder Judicial desde esa concepción rigurosa ajena a la normativa de la legitimación estatutaria, **disiento**.

Expuesta la médula de la controversia, veamos, entonces, el Derecho aplicable que la gobierna.

**I**

**A. <u>Injunction estatutario</u>**

Como es conocido, la <u>Ley para la reforma de permisos de Puerto Rico</u>, Ley Núm. 161-2009, 23 LPRA sec. 9011 <u>et seq.</u> (Ley de Permisos o Ley Núm. 161-2009) se creó con el propósito de, entre otros, establecer un nuevo marco legal y administrativo que guiará la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción por parte del Gobierno. A través de esta ley se creó la Oficina de Gerencia y Permisos (OGPe), entidad encargada del análisis, concesión o denegación de determinaciones finales

---

peticionaria. Por lo anterior, se constituyó una Sala Especial para el desempate, compuesta por los miembros de la Sala de Despacho I y el Juez Asociado señor Kolthoff Caraballo. Tras este último emitir su criterio, la votación final quedó establecida de la manera siguiente: la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Rivera García <u>no ha lugar</u>. La Jueza Presidenta Oronoz Rodríguez y el Juez Asociado señor Estrella Martínez recomendarían al Pleno expedir. **En consecuencia, la denegatoria de este recurso es el objeto de este disenso.**

y permisos relacionados al desarrollo y el uso de los terrenos del País.[2]

En lo pertinente a esta controversia, el Art. 14.1 de la Ley Núm. 161-2009 regula lo concerniente a la expedición de recursos extraordinarios para solicitar la revocación, paralización o la demolición de una obra por incumplir con la Ley de Permisos o sus reglamentos. Específicamente, tal disposición establece lo siguiente:

> La Junta de Planificación, así como cualquier entidad gubernamental concernida, Municipio Autónomo con [j]erarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de injunction, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: (1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa; (2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; (3) la paralización de un uso no autorizado; (4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.
>
> Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, entidad gubernamental concernida, Municipio Autónomo con [j]erarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso

---

[2] 23 LPRA sec. 9012d; Horizon v. JTA. Revisora, RA Holdings, 191 DPR 228, 236 (2014).

extraordinario en el Tribunal de Primera Instancia. Una vez habiéndose presentado el recurso extraordinario al amparo de esta sección, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires.

El Tribunal de Primera Instancia deberá celebrar vista dentro de un término no mayor de diez (10) días naturales desde la presentación del recurso y deberá dictar sentencia en un término no mayor de veinte (20) días naturales desde la celebración de la vista.

En aquellos casos en los cuales se solicite la paralización de una obra o uso, de ser la misma ordenada por el tribunal, se circunscribirá única y exclusivamente a aquellos permisos, obras o uso impugnado, mas no a ningún otro que se lleve a cabo en la propiedad y que cuente con un permiso o autorización debidamente expedida.

El tribunal impondrá honorarios de abogados [y abogadas] contra la parte que presenta el recurso bajo esta sección si su petición resulta carente de mérito y razonabilidad o se presenta con el fin de paralizar una obra o permiso sin fundamento en ley. Los honorarios de abogados [y abogadas] bajo esta sección será una suma igual a los honorarios que las otras partes asumieron para oponerse a la petición judicial. En el caso que el tribunal entienda que no es aplicable la presente imposición de honorarios de abogados [y abogadas], tendrá que así explicarlo en su dictamen con los fundamentos para ello. Las revisiones de los dictámenes bajo esta sección ante el Tribunal de Apelaciones se remitirán a los paneles especializados creados mediante este capítulo y dicho foro tendrá 60 días para resolver el recurso de revisión desde la presentación del mismo.[3]

Según se desprende del artículo precitado, la Ley Núm. 161-2009 instituyó lo que se conoce como un injunction estatutario. Asimismo, estableció quiénes están legitimados a solicitar tales remedios interdictales. Siendo ello así,

---

[3] 23 LPRA sec. 9024.

veamos, primeramente, en qué consiste específicamente la figura del injunction estatutario y, luego, el estándar que debe cumplir todo promovente de tal mecanismo.

De entrada, destaco que no cabe duda de que un injunction estatutario es distinto e independiente del injunction tradicional, pues el primero generalmente está exento de las exigencias legales rigurosas que rigen al segundo.[4]

Particularmente, el injunction estatutario tiene su origen en un mandato legislativo expreso de viabilizar que ciertas personas o entidades tengan acceso a los tribunales, sujeto únicamente a los criterios consignados en la ley e independientemente de que exista otra manera de reparar el agravio.[5]

Ahora bien, al evaluar la concesión del injunction estatutario se requiere un tratamiento especial, enmarcado dentro de un análisis o escrutinio judicial más acotado.[6] Es por ello que, en estos casos "[no] se requiere alegación ni prueba de daños irreparables, [sino] s[o]lo la determinación de que la [parte] demandad[a] ha violado las disposiciones de la ley".[7] Por igual, toda persona legitimada para valerse

---

[4]Next Step Medical v. Bromedicon et al., 190 DPR 474 (2014). En el caso del injunction tradicional, su rigidez obedece a que este se adoptó para disponer de situaciones en las que no existe otro remedio en ley. A.R.P.e v. Rivera, 159 DPR 429, 443-444 (2003).

[5]A.R.P.e v. Rivera, supra, págs. 443-444.

[6]Next Step Medical v. Bromedicon et al., supra, pág. 497.
[7]A.R.P.e v. Rivera, supra, pág. 444.

del injunction estatutario provisto en la Ley de Permisos deberá establecer ante el correspondiente tribunal lo siguiente: "(1) que existe una ley o reglamento que regula el uso o la actividad denunciada[,] y (2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a este reglamento".[8]

En consecuencia, el injunction estatutario de la Ley Núm. 161-2009 es un mecanismo interdictal extraordinario, de carácter sumario, que procura el cumplimiento de la Ley de Permisos y sus reglamentos. Ahora bien, ¿quién posee la capacidad para proseguir válidamente con este procedimiento especial? Veamos.

### B. Legitimación activa estatutaria

Previo a adentrarnos a discutir la normativa sobre la legitimación activa, puntualizo que, consecuente con mi visión de acceso a la justicia

> en torno a la autolimitación judicial por razones de justiciabilidad, es menester no perder de perspectiva las siguientes realidades: (1) que "[a]lgunos estados de Estados Unidos …, al igual que Puerto Rico, no tienen un requisito textual de caso o controversia en sus respectivas constituciones estatales"; (2) que algunos estados de los Estados Unidos "han rechazado incorporar las normas federales de justiciabilidad", y (3) que "las diferencias textuales, estructurales, históricas y funcionales entre nuestro ordenamiento jurídico y el federal" no pueden ser ignoradas totalmente al realizar una evaluación sobre justiciabilidad. A fin de cuentas, tal autolimitación judicial se trata, más que todo, de una norma de prudencia en cuanto a la

---

[8]Íd., pág. 445.

intervención judicial en una controversia en particular.[9]

Así las cosas, y como es conocido, la legitimación activa es una de las doctrinas de autolimitación judicial bajo el principio de la justiciabilidad. Esta fue creada, en el caso de Puerto Rico, por la vía jurisprudencial y, en esencia, procura que el pleito se tramite a nombre de la persona que por ley tenga el derecho que se reclama.

Ciertamente, en el ejercicio de determinar quién es la persona con legitimación activa para ser demandante, los tribunales analizarán el cumplimiento de ciertos requisitos, a menos que exista **"un estatuto que expresamente confiera legitimación activa a ciertas personas"**.[10] Por consiguiente, lo primero que deben hacer todas las instancias judiciales al auscultar la legitimación de un demandante es examinar si alguna disposición legal le confiere una causa de acción a determinada persona.[11]

Cuando la ley concede legitimación estatutariamente, la persona estará capacitada a presentar su reclamación por

---

[9](Énfasis en el original omitido). <u>Amadeo Ocasio et al. v. Gobernador et al.</u>, 211 DPR 278, 320 (2023) (Opinión de conformidad del Juez Asociado Señor Estrella Martínez) (citando a J. M. Farinacci Fernós, <u>Cualquier persona: La facultad plenaria de la Asamblea Legislativa para otorgar legitimación activa por la vía estatutaria</u>, 84 Rev. Jur. UPR 359, 366 (2015)).

[10](Negrillas suplidas). <u>Lozada Sánchez et al. v. JCA</u>, 184 DPR 898, 962 (2012) (citando a <u>Hernández Torres v. Gobernador</u>, 129 DPR 824, 835 (1992)).

[11]Íd.

pura voluntad legislativa sujeto únicamente a las exigencias incluidas en la ley. De hecho, la concepción de que la Asamblea Legislativa ostenta la facultad plena para otorgar legitimación activa por la vía estatutaria, independientemente de que la parte promovente haya sufrido un daño real y palpable no es de nuevo cuño, pues, desde el 1974, ha estado presente en nuestro ordenamiento jurídico.[12]

En la concesión de legitimación activa por la vía estatutaria, "el elemento decisivo será determinar el juicio legislativo en cuanto a las circunstancias que deben existir para que una parte pueda presentar un asunto para la consideración del tribunal".[13] **Dicho de otro modo, lo esencial para viabilizar continuar con el reclamo es cumplir con aquellos requisitos dispuestos en la ley.**

Por otro lado, en caso de que no exista una disposición legal concediendo legitimación activa estatutariamente, entra en función la legitimación ordinaria, la cual exige que la parte demandante demuestre: "(1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso, y no abstracto o hipotético; (3) que existe una conexión entre el daño sufrido y la causa de acción

---

[12]J. M. Farinacci Fernós, La justiciabilidad en Puerto Rico, 1ra ed., Interjuris, 2024, pág. 138-140; J. M. Farinacci Fernós, Cualquier persona: la facultad plenaria de la Asamblea Legislativa para otorgar legitimación activa por la vía estatutaria, supra.

[13]Farinacci Fernós, La justiciabilidad en Puerto Rico, supra, pág.132.

ejercitada, y (4) que la causa de acción surge bajo el palio de la Constitución o de una ley".[14]

Ahora bien, al acudir el Art. 14.1 de la Ley Núm. 161-2009, notamos que, en cuanto a la legitimación activa, se establece que cualquier persona o entidad que "**tenga un interés propietario** o personal que **podría verse adversamente afectado**, podrá presentar una acción de injunction" para vindicar su reclamo. 23 LPRA sec. 9024.[15]

Por consiguiente, bajo la Ley de Permisos toda persona o entidad está legitimada estatutariamente para presentar su reclamo, siempre y cuando la acción cuestionada **pueda afectar adversamente un interés propietario o personal** del promovente. Nótese que no se exige la consumación del daño claro y palpable, sino que basta con la **posibilidad** de que este se consuma. Habida cuenta de que esa misma disposición es la que habilita la expedición de recursos extraordinarios que guarden la relación con un permiso otorgado por la OGPe queda claro que, bajo la Ley Núm. 161-2009, una parte está legitimada por ley para vindicar su reclamo sin los

---

[14]Torres Montalvo v. Gobernador ELA, 194 DPR 760, 767 (2016) (citando a Hernández Torres v. Gobernador, supra, pág. 836).

[15]Resáltese que la Ley Núm. 76 de 24 de junio de 1975 (derogada) predecesora contenía una especie de legitimación estatutaria esencialmente idéntica a la de autos. Para un análisis sobre el particular, véase, Brito Díaz et al. v. Bioculture et al., 183 DPR 720, 732 (2011) (Opinión de conformidad del Juez Asociado señor Estrella Martínez).

rigorismos característicos de la legitimación activa ordinaria.

Finalmente, no cabe duda de que un competidor tiene la legitimación activa para cuestionar la legalidad de las actuaciones de otro cuando ello repercute en las actuaciones o intereses del primero. A esos efectos, en Col. Peritos Elec. v. A. E. E., 150 DPR 327, 335-336 (2000), resolvimos que "si existe una disposición legal que específicamente establece una protección a un grupo particular de personas, regulando así el mercado, dicho grupo tendrá legitimación activa para impugnar la alegada violación de la protección legal otorgada". En el caso de autos, el alegado uso de una valla publicitaria sin permiso para ello.

Examinados los contornos normativos, veamos, entonces, los hechos que dan lugar a la controversia ante nos.

## II

El 5 de julio de 2023, B Billboard BG, LLC (Peticionaria o B Billboard) presentó una petición de Interdicto estatutario en virtud del Art. 14.1 de la Ley Núm. 161-2009 en contra de Out of Home Media, LLC (Recurrida). En síntesis, adujo que es una empresa que se dedica al negocio de vallas publicitarias digitales y que la Recurrida es una compañía competidora que opera una valla en la Urbanización Park Gardens sin el debido permiso de uso.

En atención a su legitimación activa, la Peticionaria expuso que posee derecho propietario como dueña de una valla

publicitaria localizada 797 metros de la alegada valla desautorizada. Manifestó que el permitirle a la Recurrida dicha operación conlleva una competencia desleal pues le genera desventaja competitiva y que podría ocasionarles una afectación adversa a sus derechos propietarios. A su vez, arguyó que para presentar la acción solo es necesario que demuestre que la Recurrida no cuenta con la autorización para instalar la valla ni con un permiso de uso para operar. Por todo ello, solicitó se expidiera el recurso de injunction para ordenarle a la Recurrida a paralizar y cesar del uso de la valla publicitaria ilegal.

El 18 de julio de 2023, la Recurrida presentó una Solicitud de desestimación sumaria. En resumen, manifestó que las alegaciones de la Peticionaria dejaron de exponer una reclamación susceptible de un remedio al amparo del Art. 14.1 de la Ley Núm. 161-2009. Sobre el particular, planteó que la petición no estaba juramentada y que tampoco se acompañó de una certificación negativa de la OGPe que sustentara la alegada falta de permiso. En cuanto a esto último, señaló que del Single business portal se desprende que la valla publicitaria en controversia cuenta con un permiso válido expedido por la OGPe bajo el núm. 2021-398015-PRA-014767 el cual incluyó en su moción y solicitó al foro

primario tomara conocimiento judicial en virtud de la Regla 201 de Evidencia, 32 LPRA Ap. VI.[16]

En respuesta a la solicitud de desestimación, el 19 de julio de 2023, el foro primario ordenó a la Peticionaria a que expusiera su posición y, además, le ordenó que mostrara causa por la cual no se debía desestimar la petición por falta de legitimación activa entre competidores. En específico, el foro le ordenó a especificar cuáles son los daños reales, inmediatos, precisos (y no abstractos o hipotéticos) a los que se expone de no concederse el remedio solicitado.

En cumplimiento, el 27 de julio de 2023, la Peticionario presentó su Oposición a desestimación. En esta argumentó que el permiso que presentó la Recurrida tiene un número de catastro distinto al de la propiedad en la que se encuentra la valla publicitaria.[17] Por ello, argumentó que al no existir equivalencia entre la autorización y la propiedad la valla publicitaria en controversia, operaba sin permiso. En

---

[16]La Recurrida manifestó que existía discrepancia en el último dígito del número de catastro de las alegaciones de la Petición de Interdicto Estatutario y el permiso en cuestión. Pero adujo que el Permiso tenía otros datos de identificación, como la descripción registral de la propiedad y la dirección física, que coincidían con las características físicas de la valla en controversia. Véase, Apéndice, págs. 24-25.

[17]Al respecto manifestó que el permiso que incluyó la Recurrida es con el núm. de catastro 087-045-899-02 pero que la valla está en la propiedad con núm. 087-045-899-01. Véase, Apéndice, pág. 61.

atención al cuestionamiento sobre su legitimación, manifestó que tiene un derecho propietario sobre una valla cercana y que de sus alegaciones surgen las razones por las que podría verse adversamente afectada bajo el Art. 14.1 de la Ley Núm. 161-2009. En cuanto a ello señaló que "meramente exige que se demuestre que la parte promovente y peticionaria es una persona con interés leg[í]timo que podría verse afectada".[18]

El 7 de agosto de 2023, la Recurrida presentó una Réplica en apoyo a solicitud de desestimación. En esencia, esgrimió que la Peticionaria pretendía enmendar sus alegaciones para impugnar la validez del permiso y sin ser el interdicto estatutario bajo la Ley Núm. 161-2009 el mecanismo para ello. En específico, argumentó que al amparo del Art. 9.10 del mencionado estatuto se presume la corrección y la legalidad de los permisos expedidos por la OGPe. Alegó que la Peticionaria intenta atacar colateralmente un permiso final y firme mediante un procedimiento extraordinario.[19] Por todo ello, expresó que el foro primario carecía de jurisdicción sobre la materia y se reiteró en su solicitud de desestimación.

---

[18]Véase, Apéndice, pág. 63.

[19]La Recurrida también esbozó que el 5 de agosto de 2023, el Ing. Ángel D. Rodríguez Quiñones preparó un Lot plan donde se describió la cabida de la finca en que se ubica la valla publicitaria y que coincide con la descripción registral del permiso concedido para operar. Añadió que procedería a presentarse al Centro de Recaudación de Ingresos Municipales para la rectificación correspondiente en el número de catastro.

Luego de varios incidentes procesales, el Tribunal de Primera Instancia dictó Sentencia en la que se desestimó y se ordenó el archivo del caso por falta de jurisdicción, en particular, debido a la ausencia de legitimación activa de la Peticionaria. Sobre ello expresó que B Billboard no logró establecer claramente en qué medida está o pudiera estar "adversamente afectada" por la valla publicitaria de la Recurrida para propósitos de lo dispuesto en el Art. 14.1 de la Ley Núm. 161-2009. El foro resolvió que no demostró "de forma específica y clara que sufre o sufrirá una lesión o daño particular por dicha obra, sino que solo ha formulado alegaciones especulativas e hipotéticas sobre las posibles consecuencias del uso de dicha valla publicitaria".[20]

Inconforme, la Peticionaria presentó un recurso de Apelación civil ante el Tribunal de Apelaciones. En resumen, arguyó que el foro primario erró al requerir un estándar de legitimación más riguroso –al palio del principio de justiciabilidad– que el aplicable al interdicto estatutario en virtud del propósito de la Ley Núm. 161-2009. En particular, señaló que el estatuto provee que una parte legitimada para solicitar el remedio judicial es una que podría resultar adversamente afectada en un interés propietario y privado. En atención a ello, adujo que erró el foro primario al desestimar la causa de acción y no

---

[20]Véase, Recurso de Apelación, Sentencia del TPI, Apéndice, pág. 120.

reconocerle que alegó con suficiencia los daños palpables y reales a los que se expone por la operación ilícita. A su vez arguyó que incidió el Tribunal de Primera Instancia al no permitir una vista evidenciaria para pasar prueba sobre la afectación adversa que le provocan las acciones de la Recurrida. En respuesta, la Recurrida presentó nuevamente una solicitud de desestimación en la que, en síntesis, reiteró por diversos fundamentos la improcedencia del remedio solicitado y repitió la alegada falta de legitimación activa.

Consecuentemente, el Tribunal de Apelaciones notificó una <u>Sentencia</u> en la que confirmó la determinación del foro primario de desestimar la acción bajo el fundamento de falta de legitimación activa.[21] En resumen, determinó que en nuestro ordenamiento es un requisito fundamental poseer legitimación activa en términos constitucionales para recurrir al foro judicial y demostrar la existencia de una controversia genuina. Añadió que las alegaciones de la Peticionaria respecto a sus daños fueron hipotéticas y especulativas, y que no podía alegar o demostrar ningún perjuicio real en detrimento suyo.

Insatisfecha, el 29 de diciembre de 2023, la Peticionaria presentó el recurso de apelación ante nuestra atención. En síntesis, se reiteró en los errores esgrimidos

---

[21]El Hon. Juez Sánchez Ramos del Tribunal de Apelaciones disintió con expresión escrita.

ante el foro apelativo intermedio sobre la existencia de legitimación activa estatutaria y el cumplimiento de sus requisitos para figurar como demandante y proseguir con la causa de acción. Por otra parte, en su comparecencia oponiéndose a la expedición del recurso, la Recurrida esencialmente reiteró los planteamientos realizados ante en el Tribunal de Apelaciones.

Así las cosas, el recurso fue acogido como certiorari y se declaró no ha lugar por una Sala de este Tribunal mediante Resolución del 15 de febrero de 2024. Inconforme, el 1 de marzo de 2024 la Peticionaria presentó la Solicitud de reconsideración de autos. En ese entonces la votación de los miembros de la Sala para expedir en reconsideración este recurso quedó igualmente dividida y tras la creación de una sala especial el criterio mayoritario fue para denegar el recurso, razón por la cual disiento. Así las cosas, procedo a exponer las razones en las que se fundamenta mi disenso.

Es norma conocida que cuando se presentan interrogantes respecto a la legitimación activa de un litigante, los tribunales debemos presumir que las alegaciones que se presentaron en su recurso son ciertas y se debe evaluar la causa de acción de la manera más favorable para la parte solicitante.[22] Ahora bien, la evaluación será de la forma

_____

[22]Véase, Crespo v. Cintrón, 159 DPR 290, 299 (2003).

más favorable sobre aquellos hechos bien alegados y que se expresaron de manera clara.[23]

Soy del criterio que las alegaciones de la Peticionaria estaban expresadas de manera clara y eran suficientes para que ambos foros recurridos le reconocieran legitimación activa para solicitar un interdicto estatutario en virtud del propio texto y propósito del Art. 14.1 de la Ley Núm. 161-2009. A saber, que la Peticionaria del recurso extraordinario posea un "interés propietario o personal que podría verse adversamente afectado". **No se necesitaba satisfacer nada más.**

Al cumplirse con ese estándar estatutario, quedaba superado cualquier requisito o análisis de índole constitucional en torno al principio de justiciabilidad. Referente a ello, ya desde <u>Hernández Torres v. Gobernador</u>, supra, pág. 835, este Tribunal ha concluido que, "en ausencia de un estatuto que expresamente confiera legitimación activa a ciertas personas", es que haría falta que el litigante demuestre su legitimación con los requisitos ordinarios, a saber: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso, y no abstracto o hipotético; (3) que existe una conexión entre el daño sufrido

---

[23]<u>González Méndez v. Acción Social</u>, 196 DPR 213, 235 (2016).

y la causa de acción ejercitada, y (4) que la causa de acción surge bajo el palio de la Constitución o de una ley.[24]

Asimismo, y en palabras del Profesor Farinacci:

> Es decir, <u>solo si no existe ese estatuto que otorgue directamente legitimación</u> es que debe recurrirse a los requisitos de daño palpable, nexo causal y remedio adecuado; en otras palabras, a la doctrina ordinaria de legitimación activa. Esto da la apariencia de que existen dos <u>tipos diferentes de análisis</u> sobre legitimación activa: la ordinaria (daño claro y palpable, causalidad y remedio) **y la estatutaria (que opera por sí sola y está limitada únicamente por el juicio legislativo).**[25]

De esta forma, me parece desatinada la conclusión de los foros recurridos de desestimar la acción haciendo uso de criterios que el legislador no contempló para conceder un remedio extraordinario, sumario e independiente mediante el Art. 14.1 de la Ley Núm. 161-2009, y cuyo resultado material fue cerrarle las puertas del Tribunal a una parte legitimada estatutariamente para ello.[26]

Al respecto nos dice el Profesor Farinacci:

> [E]sto explica por qué una persona que no ha sido directamente agraviada puede, de todos modos, recurrir al foro judicial si la Asamblea

---

[24]<u>Hernández Torres v. Gobernador</u>, supra, págs. 835-836 (citas omitidas).

[25](Negrilla suplida) J.M. Farinacci Fernós, <u>Cualquier persona: la facultad plenaria de la Asamblea Legislativa para otorgar legitimación activa por la vía estatutaria</u>, supra, pág. 367; M. Farinacci Fernós, <u>La justiciabilidad en Puerto Rico</u>, supra, pág. 136. El autor le llama norma binaria, la cual distingue entre la legitimación estatutaria (autoridad legislativa plenaria) y la legitimación activa tradicional (requisitos de daño claro y palpable, causalidad y remedio).

> Legislativa ha autorizado tal accionar mediante la otorgación de legitimación activa por la vía estatutaria. En esos casos, la parte promovente está autorizada – o legitimada- para presentar su acción por pura voluntad legislativa. Precisamente, la existencia de esa alternativa es indicativa de que la doctrina de legitimación activa no implica directamente el principio de separación de poderes, sino que surge mayormente del requisito de autolimitación judicial de caso o controversia[…].[27]

Según indiqué, de las alegaciones ante el foro primario se desprende que la Peticionaria posee un derecho propietario sobre una valla publicitaria que ubica en apenas 797 metros de la valla sin el alegado permiso de la Recurrida. Indudablemente, la Peticionaria, como participante y competidora en la industria regulada de las vallas publicitarias, posee una expectativa a competir bajo las mismas condiciones de ley. En ese sentido, la alegada operación ilegal de la valla aquí en controversia le podría afectar adversamente su derecho propietario o personal a una competencia legal, leal y justa. Como muy bien alegó la Peticionaria, la posible operación de una valla cercana sin permiso de ubicación y de uso **tiene la posibilidad de afectar adversamente** al ocasionar una desventaja económica injustificada respecto a aquellos que operan fuera del marco legal.

Reitero que la figura de la legitimación activa estatutaria no es una ajena en nuestro ordenamiento, puesto

---

[27] (Énfasis omitidos) Farinacci Fernós, La justiciabilidad en Puerto Rico, op cit., pág. 132.

que en repetidas ocasiones hemos reconocido que la Asamblea Legislativa tiene plena facultad para brindar legitimación por la vía estatutaria, independientemente de que la persona haya sufrido un daño claro, palpable e individualizado.[28] **Los foros recurridos fallaron en así reconocerlo. En consecuencia, este Tribunal no debió quedar silente ante la dilución de la legitimación estatutaria.**

### III

Empero, una mayoría de mis compañeros de la Sala Especial desaprovechó la oportunidad de atender el recurso incoado y, con ello, distinguir y reconocer el análisis requerido de legitimación activa estatutaria, particularmente para presentar un interdicto bajo el Art. 14.1 de la Ley Núm. 161-2009 vis à vis la legitimación activa ordinaria a partir del principio de justiciabilidad y como norma de autolimitación judicial.

Contrario a este proceder, hubiese expedido el recurso ante nuestra consideración con el propósito de revocar las sentencias recurridas por estas haber sido resueltas bajo el estándar riguroso de legitimación activa ordinaria, a pesar de que, por pura voluntad legislativa, la Ley Núm. 161-2009 viabilizó que ciertos reclamos bajo la Ley de Permisos puedan ser presentados por personas o entidades con

---

[28]Véase, J.M. Farinacci Fernós, Cualquier persona: la facultad plenaria de la Asamblea Legislativa para otorgar legitimación activa por la vía estatutaria, supra, págs. 367-369.

legitimación activa estatutaria. Toda vez que aquí se refrenda lo contrario, **disiento**.


                                   Luis F. Estrella Martínez
                                        Juez Asociado