ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JOSÉ SANTIAGO SUARDIAZ<br><br>Apelada<br><br>v.<br><br>MARBELLA 63, LLC<br><br>Apelante | **KLAN202500541** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. SJ2024CV10054<br><br>Sobre:<br>*Injunction* Estatuario, Procedimiento Especial, Revocación de Permiso de Construcción, Art. 14.1 de la Ley 161 del 2009, según enmendada |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Bonilla Ortiz, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2025.

Comparece Marbella 63, LLC. (parte apelante o Marbella), y solicita que revisemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, emitida el 28 de abril de 2025 y notificada el mismo día. Mediante el referido dictamen, el foro primario declaró *Ha Lugar* una *Demanda de Injuction Estatutario y Petición de Revocación de Permiso de Construcción* instada por el Sr. José Santiago Suardiaz (apelado o señor Santiago Suardiaz).

En virtud del dictamen apelado, el foro primario revocó el *Permiso de Construcción* otorgado a Marbella; ordenó la paralización de cualquier obra de construcción; y ordenó la demolición inmediata de la obra construida mediante el *Permiso de Construcción* revocado.

Por los fundamentos que se exponen a continuación, **REVOCAMOS** la *Sentencia* apelada.

I.

El caso de autos inició el 29 de octubre de 2024, cuando el señor Santiago Suardiaz presentó una *Demanda de Injuction Estatutario y Petición de Revocación de Permiso de Construcción*.[1] En esta, alegó ser vecino colindante de la propiedad dueña de Marbella 63, LLC (Marbella), ubicada en la Calle Marbella #63, sector Condado, San Juan, PR 00907. Esbozó que, Marbella obtuvo el *Permiso de Construcción*, expedido por un Profesional Autorizado -el Sr. Julio González Fortuño-, bajo el caso 2024-580644-PCOC-305330, para una hospedería turística de 25 habitaciones. No obstante, señaló que la propiedad para la cual fue autorizado el *Permiso de Construcción* está calificada como R-Residencial, y en el distrito no está permitido ministerialmente el uso de *Casa de Huéspedes*. Asimismo, alegó que la construcción propuesta y autorizada no cumplía con varios parámetros establecidos por el *Reglamento de Calificación Especial del Condado*, Reglamento Núm. 8989 del 21 de agosto de 2017 (Reglamento del Condado), así como por el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9473 del 16 de junio de 2023 (Reglamento Conjunto). Además, sostuvo que la expedición del *Permiso de Construcción* privó al apelado de su derecho al debido proceso de ley ya que no fue notificado según lo exige el *Reglamento Conjunto*. Por todo lo anterior, solicitó la revocación del *Permiso*

---

[1] *Demanda de Injuction Estatutario y Petición de Revocación de Permiso de Construcción*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

*de Construcción* y una cantidad no menor de $10,000.00 por concepto de costas y honorarios de abogados.

El 19 de noviembre de 2024, el Sr. Federico Hernández Denton (señor Hernández) presentó una *Solicitud de Intervención*.[2] Mediante la cual, indicó que era codueño de una propiedad destinada a vivienda en la Calle Marbella #61 en el Condado. Por lo que, poseía intereses patrimoniales y personales que podrían verse afectados por las construcciones llevadas a cabo por Marbella.

Posteriormente, el 22 de noviembre de 2024, el señor Santiago presentó la *Demanda Enmendada de Injunction Estatutario y Petición de Revocación de Permiso de Construcción*.[3]

Por su parte, el 13 de diciembre de 2024, Marbella solicitó la desestimación de la demanda.[4] En síntesis, alegó que el señor Santiago no cumplió con los requisitos ordinarios de la legitimación activa, ni con los requisitos de legitimación del *injunction* estatutario que provee la Ley Núm. 161 del 1 de diciembre de 2009, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, 23 LPRA sec. 9011 *et seq.* (Ley Núm. 161-2009). Asimismo, alegó que la solicitud de intervención presentada por el señor Hernández debía declararse *No Ha Lugar* debido a que, al igual que el señor Santiago, este carecía de legitimación activa. Por otro lado, señaló que el *Permiso de Construcción* era de carácter ministerial y que el proyecto contempla un uso permitido en la Zona

---

[2] *Solicitud de Intervención*, entrada núm. 15 en SUMAC.
[3] *Demanda Enmendada de Injunction Estatutario y Petición de Revocación de Permiso de Construcción*, entrada núm. 20 en SUMAC.
[4] *Moción de Desestimación*, entrada núm. 26 en SUMAC.

Residencial (Zona "R") donde radica. Por ello, sostuvo que el Profesional Autorizado tenía la facultad para expedir el permiso impugnado.

En reacción a la *Moción de Desestimación*, el 19 de diciembre de 2024, el señor Santiago presentó una *Oposición a Moción de Desestimación*.[5] Por medio de esta, reiteró que se encuentra directamente afectado por un *Permiso de Construcción* otorgado en contravención con las leyes y reglamentos. Adujo que dichos incumplimientos le conceden legitimación activa para solicitar un remedio interdictal al amparo del Artículo 14.1 de la Ley Núm. 161-2009, *supra*. Sostuvo que el *Permiso de Construcción* fue expedido por un Profesional Autorizado que carecía de facultad para otorgarlo, en violación de la Ley Núm. 161-2009, *supra*, y del *Reglamento Conjunto*. Esbozó que dicho permiso no cualificaba como uno de carácter ministerial, ya que el proyecto propuesto conllevaba variaciones de uso y construcción.

Por su parte, el 24 de diciembre de 2024, el señor Hernández, presentó *Moción en Oposición a Moción de Desestimación*.[6] En síntesis, alegó que la ampliación del edificio se extiende a las colindancias de su propiedad, sobrepasando los límites permitidos para que el permiso pudiera considerarse de carácter ministerial. Asimismo, adujo que el permiso no cualificaba como uno de carácter ministerial debido a que conllevaba variaciones de uso y construcción, por lo cual debió tramitarse mediante el mecanismo de Consulta de

---

[5] *Oposición a Moción de Desestimación*, entrada núm. 32 en SUMAC.
[6] *Moción en Oposición a Moción de Desestimación*, entrada núm. 33 en SUMAC.

Ubicación o Construcción. Sostuvo que, al no tratarse de un permiso ministerial, el profesional autorizado estaba impedido de expedirlo. Al respecto, el señor Hernandez, alegó que la construcción se estaba realizando con un permiso expedido en contra del derecho vigente.

Tras evaluar dichas mociones, el 10 de enero de 2025, el foro primario emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de desestimación presentada por Marbella.[7]

Posteriormente, el 28 de abril de 2025, el foro primario notificó una *Sentencia*, en la cual determinó lo siguiente:[8]

> […] el permiso de construcción para una "Casa de Huéspedes" en la propiedad de la parte demandada requería un análisis discrecional y no podía ser tramitado como un permiso ministerial. Siendo así, el permiso fue otorgado utilizando información incorrecta al ser clasificado como ministerial cuando su naturaleza reglamentaria exigía un trámite discrecional. Esta conclusión activa el remedio dispuesto en el Artículo 14.1 de la Ley Núm. 161-2009, *supra*, para la revocación de permisos otorgados "utilizando información incorrecta o falsa". *Íd.*

Luego de evaluar los argumentos formulados por las partes, el foro primario centró su análisis en determinar si, conforme al *Reglamento del Condado*, el uso propuesto como "casa de huéspedes" requiere de un análisis cualitativo y cuantitativo. El foro primario sostuvo que la designación de un uso como limitado en el *Reglamento del Condado*, tiene como consecuencia que el uso propuesto esté sujeto a una evaluación cualificada y cuantificada. Indicó que dicha evaluación trasciende

---

[7] *Resolución*, entrada núm.46 en SUMAC.
[8] *Sentencia*, entrada núm. 85 en SUMAC.

la mera aplicación mecánica de criterios objetivos, por lo que se debe realizar un análisis más detallado y específico. Asimismo, dispuso que el Profesional Autorizado excedió el ámbito de su autoridad al emitir el permiso impugnado por la vía ministerial. Así pues, declaró *Ha Lugar* la *Demanda* de *Injuction Estatutario y Petición de Revocación de Permiso de Construcción* presentada por el señor Santiago. Por consiguiente, revocó el *Permiso de Construcción* otorgado a Marbella; ordenó la paralización de cualquier obra de construcción; y ordenó la demolición inmediata de la obra construida mediante el *Permiso de Construcción* revocado.

Luego de varios trámites procesales, el 13 de junio de 2025, Marbella 63, LLC. presentó el recurso de apelación que nos ocupa y señaló los siguientes tres (3) errores:

> PRIMER ERROR: Erró el TPI al acoger y entender sobre la Demanda de Injuction Estatutario y Petición de Revocación de Permiso porque el Demandante no demostró tener la legitimación activa necesaria para instar el recurso. Asimismo, erró el TPI al permitir la intervención de Federico Hernandez Denton porque este tampoco demostró tener la legitimación activa necesaria para intervenir en el pleito.

> SEGUNDO ERROR: Erró el Honorable TPI en la aplicación del derecho al concluir que la designación de un uso, como un "uso limitado" en el RCEC, como lo es el de casa de huéspedes (que está expresamente autorizado en la zona donde se propone, por sí sola, modifica el carácter del trámite para su autorización a uno Discrecional.

> TERCER ERROR: Erró el Honorable Tribunal al ordenar la demolición de la obra construida en virtud del Permiso de Construcción porque la Ley 161 expresamente permite o autoriza la legalización, subsanación y rectificación del uso o construcción de una propiedad o estructura sin permiso, más aún cuando es una estructura existente.

Evaluados los argumentos de las partes, disponemos del asunto ante nuestra consideración.

## II.

### -A-

La Ley Núm. 161 del 1 de diciembre de 2009, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, según enmendada, 23 LPRA sec. 9011 *et seq.* (Ley Núm. 161-2009), rige los procesos de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). En lo aquí atinente, el Artículo 14.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9024*,* regula lo referente a los recursos extraordinarios para solicitar la revocación de algún permiso, la paralización de obras o usos no autorizados y la democión de obras de construcción. En particular, dicho articulado lee como sigue:

> La Junta de Planificación, así como cualquier entidad gubernamental concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction, mandamus*, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: (1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa; (2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; (3) la paralización de un uso no autorizado; (4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.
> […]

El antedicho Artículo estatuye un mecanismo interdictal extraordinario de carácter estatutario y sumario. *ARPe v. Rivera,* 159 DPR 429, 443-444 (2003). Dada su naturaleza, el injunction estatutario es independiente del injunction tradicional y exento de las exigencias legales que rigen a este. *Next Step Medical v. Bromedicom et al,* 190 DPR 474 (2014). Los requisitos para la ejecución del injunction tradicional son más rigurosos que los aplicables a aquel de índole estatutario. *Íd.* Por su parte, la concesión del injunction estatutario*,* contrario al interdicto tradicional, "requiere un tratamiento especial, enmarcado en un escrutinio judicial más acotado." *Next Step Medical v. Bromedicom et al*, supra, pág. 497. Así, al interponerse una petición de injunction de esta naturaleza, "[no] se requiere alegación ni prueba de daños irreparables, [sino] solo la determinación de que el demandado ha violado las disposiciones de la ley." *ARPe v. Rivera*, supra, pág. 444. Por igual, y en el contexto específico del empleo del mecanismo interdictal establecido en el Artículo 14.1 de la Ley 161-2009, *supra*, toda persona legitimada para valerse del mismo deberá establecer ante el tribunal: 1) que existe una ley o reglamento que regula el uso o actividad denunciada y; 2) que la persona o personas señaladas se encuentran realizando un uso o actividad en violación a esa ley o reglamento. *ARPe v. Rivera*, supra, pág. 445.

-B-

La Ley Núm. 161-2009, *supra*, creó la figura del Profesional Autorizado, como un ente privado certificado o autorizado por la OGPe, el cual puede ser un agrimensor, agrónomo, arquitecto, geólogo, ingeniero o

planificador licenciado en áreas relacionadas a la construcción. 23 LPRA sec. 9017. Asimismo, el Artículo 7.1 de la Ley Núm. 161-2019, 23 LPRA sec. 9017, dispone que estos "evaluarán o expedirán permisos ministeriales, en cumplimiento con las disposiciones de esta Ley y cualquier otra disposición legal aplicable". 23 LPRA sec. 9017.

Por su parte, el Artículo 1.5 de la Ley 161-2009, *supra*, define el término ministerial como sigue:

> 48) "Ministerial" — describe una determinación que no conlleva juicio subjetivo por parte de un funcionario público o Profesional Autorizado sobre la forma en que se conduce o propone una actividad o acción. El funcionario o Profesional Autorizado meramente aplica los requisitos específicos de las leyes o reglamentos a los hechos presentados, pero no utiliza ninguna discreción especial o juicio para llegar a su determinación, ya que esta determinación involucra únicamente el uso de estándares fijos o medidas objetivas. El funcionario no puede utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada. Por ejemplo, un permiso de construcción sería de carácter ministerial si el funcionario sólo tuviera que determinar si el uso es permitido en la propiedad bajo los distritos de calificación aplicables, si cumple con los requisitos de edificabilidad aplicables (e.g., Código de Construcción) y si el solicitante ha pagado cualquier cargo aplicable y presentado los documentos requeridos; el Reglamento Conjunto de Permisos contendrá una lista en la que se incluyan todos los permisos que se consideran ministeriales.

Por otro lado, el inciso 26 del Artículo 1.5 de la Ley Núm. 161-2009, *supra*, define el termino discrecional de la siguiente forma:

> 26) "Discrecional" — Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento

especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse.

En cuanto los permisos expedidos por el Profesional Autorizado, el Artículo 7.3 (A) de la Ley 161-2009, 23 LPRA sec. 9017b, dispone que este podrá otorgar o denegar, entre otros, permisos de uso; permisos de construcción para remodelar; y permisos de construcción. 23 LPRA sec. 9017b. Consonó con lo anterior, cuando el Profesional Autorizado expide un permiso de carácter *ministerial*, no está facultado para emplear criterios subjetivos o discrecionales. 23 LPRA sec. 9011. Este se debe limitar a determinar, por ejemplo: si el uso es permitido en la propiedad bajo los distritos de calificación aplicables; si cumple con los requisitos de edificabilidad pertinentes; si el solicitante ha presentado los documentos requeridos y satisfecho los pagos, entre otros. *Íd*. En función de ello, el Artículo 7.3 (A) de la Ley Núm. 161-2019, *supra*, exige que toda determinación final o certificación expedida por un Profesional Autorizado incluya en el expediente una evaluación de los parámetros aplicables conforme a las leyes y reglamentos vigentes que utilizó para realizar la misma. 23 LPRA sec. 9017b.

-C-

Por virtud de la Ley Núm. 161-2009, *supra*, la Junta de Planificación, en colaboración con la OGPe, adoptó el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios*, Reglamento Núm. 9473 del 16 de

junio de 2023 (Reglamento Conjunto). Este Reglamento también recoge la normativa relacionada a los deberes y facultades del Profesional Autorizado al conceder un permiso ministerial. En lo que respecta a la controversia ante nuestra atención, la Sección 2.3.1.2 del Reglamento Conjunto dispone que un Profesional Autorizado podrá otorgar un permiso de construcción, siempre y cuando sea de carácter ministerial.

Cónsono con lo anterior, el Reglamento Conjunto dispone que "para la evaluación de solicitudes de permisos ministeriales se aplicarán solamente los requisitos específicos de las leyes o reglamentos aplicables a los hechos presentados, y no se utilizará ninguna discreción especial o juicio para llegar a la determinación, ya que la misma involucra únicamente el uso de los estándares fijos y medidas objetivas". Sección 2.2.1.3 (a) del Reglamento Conjunto. Asimismo, dispone que "al evaluar solicitudes de permisos ministeriales, los funcionarios o el Profesional Autorizado no podrán utilizar juicios subjetivos, discrecionales o personales al decidir si una actividad debe ser realizada o cómo debe ser realizada". Sección 2.2.1.3 (b) del Reglamento Conjunto. Por ello, la Sección 2.2.2 del Reglamento Conjunto, establece que los asuntos de naturaleza discrecional serán atendidos por la Junta Adjudicativa, el Secretario Auxiliar de la OGPe o los Municipios Autónomos con Jerarquía de la I a la V, quienes tomarán su determinación final considerando la totalidad del expediente.

**-D-**

Por ser la zona del Condado uno de los centros de principal actividad turística en la Isla, la Junta de

Planificación promulgó el *Reglamento de Calificación Especial del Condado*, Reglamento Núm. 8989 del 21 de agosto de 2017 (Reglamento del Condado) con el propósito de asegurar y fomentar la salud, seguridad, orden, prosperidad y bienestar general de todos los usuarios, y residentes del sector. Secc. 1.02 del Reglamento del Condado. Referente al caso de autos, la Sección 2.02 del Reglamento del Condado divide el área del Condado en cinco (5) zonas. Estas zonas son:

> Zona Comercial Turística (CT): se establece para clasificar usos turísticos aquellos usos próximos a estos que apoyan, complementan y/o no socavan el uso turístico. Las actividades en esta zona no deben ofrecer oportunidad para que surjan conflictos o entorpezcan la actividad turística. Esta zona está íntimamente ligada a flujos peatonales.

> Zona Comercial Regional (CRE): se establece para clasificar áreas comerciales cuyo mercado transciende en forma significativa aquel compuesto por su vecindario inmediato. Esta zona está íntimamente ligada con un alto flujo vehicular.

> Zona Residencial (R): se establece para clasificar áreas dedicadas exclusivamente al uso residencial.

> Zona Institucional (INS): se establece para clasificar las iglesias, hospitales y escuelas elementales y superiores actualmente existentes en la zona.

> Zona Pública (P): está conformada por los terrenos propiedad del gobierno, gran parte de ellos destinados al uso recreativo. […]

Por otra parte, la Sección 2.04 del Reglamento del Condado dispone los usos permitidos por zona. En lo pertinente a la controversia ante nuestra consideración, la "Tabla 1" de dicha sección dispone que en la Zona Residencial (R), se permite, de manera limitada, el uso correspondiente al servicio de casa de huéspedes ("*guest house*"). Asimismo, para los usos clasificados con carácter limitado, resulta aplicable lo dispuesto en la

Sección 2.05 del Reglamento del Condado. Dicha sección lee como sigue:

> **2.05 Características especiales para usos seleccionados**
> Se incluyen algunos usos, en orden alfabético, cuyas características es necesario cualificar y cuantificar para asegurar el orden, la seguridad y el bienestar público.

En lo concerniente a las casas de huéspedes, la sección 2.05.03 establece lo siguiente:

> **2.05.03 Casas de huésped**
> Facilidad de alojamiento que cumpla con las normas de la Compañía de Turismo. En las zonal "CT" y "CRE" se permitirán barras y restaurantes que sean completamente interiores y orientados al uso de los huéspedes e invitados; el número de sillas en la barra o el restaurante no podrá exceder el número total de habitaciones y los mismos no podrán anunciarse en el exterior de la estructura o solar. En la zona "R" no se permitirán casas de huéspedes con barra y restaurante; las mismas se limitarán a brindar cama y desayuno.

## III.

Por estar relacionados, atendemos en conjunto los señalamientos de error planteados por el apelante. En síntesis, Marbella alega que incidió el foro primario al declarar *Ha Lugar* la *Demanda*. En cuanto a este particular, arguye que, tanto el señor Santiago como el señor Hernández, no demostraron tener la legitimación activa necesaria para instar el recurso. Asimismo, como segundo señalamiento de error, argumenta que el foro primario erró al concluir que la designación de un uso como un "uso limitado" en el *Reglamento del Condado*, modifica el carácter del trámite para su autorización a uno discrecional. Como tercer y último señalamiento de error, el apelante sostiene que erró el foro primario al ordenar la demolición de la obra construida en virtud del *Permiso de Construcción*. Ello debido a que la Ley

Núm. 161-2009, permite la legalización, subsanación y rectificación del uso o construcción de una propiedad o estructura sin permiso.

Luego de una evaluación minuciosa del legajo ante nos, concluimos que le asiste la razón a Marbella. Veamos.

Según esbozado anteriormente, la Ley Núm. 161-2009, *supra*, creó la figura del Profesional Autorizado con el fin de evaluar y expedir únicamente permisos ministeriales. En cuanto a los permisos expedidos por estos, dicha ley establece que podrán otorgar permisos de uso; permisos de construcción para remodelar; permisos de construcción; entre otros. Asimismo, el *Reglamento Conjunto* establece que un Profesional Autorizado podrá otorgar un permiso de construcción, siempre que este sea de carácter ministerial.

En el caso ante nuestra consideración, Marbella obtuvo un *Permiso de Construcción*, expedido de manera ministerial por un Profesional Autorizado, para habilitar una estructura para la operación de una casa de huéspedes ("*guest house*"). La propiedad se encuentra ubicada en una Zona Residencial (R), al amparo del *Reglamento del Condado*. Asimismo, del Memorial Explicativo presentado por Marbella, se desprende que la propiedad contará con veinticinco (25) habitaciones, cada una con su baño, y un área de recibidor; área para recibir huéspedes fuera del rodaje, acceso para personas con problemas de movilidad; salón comedor con capacidad para atender a los huéspedes; cocina para preparar desayuno de los huéspedes; cuatro (4) baños en las áreas

comunes; piscina; terraza; y un área de estacionamiento para acomodar diez (10) carros.

Examinado con detenimiento el recurso y la prueba documental, concluimos que el foro primario incidió en cuanto al segundo error señalado por la parte apelante. Ello ya que, según la normativa establecida, nada impide que un Profesional Autorizado concediera un permiso de construcción, siempre y cuando este sea de carácter ministerial. En el trámite de dicho permiso, el Profesional Autorizado no empleó un juicio subjetivo o discrecional para llegar a su determinación, por lo que no se extralimitó en sus facultades. Más bien, a tenor con la Ley Núm. 161-2009, *supra*, y el Reglamento Conjunto, *supra*, este utilizó los estándares fijos establecidos en el *Reglamento del Condado*. Sobre este particular, la limitación a la que está sujeta el uso de la casa de huéspedes ("*guest house*") en la Zona Residencial (R), está específicamente definida con criterios puntuales y objetivos y no da margen a interpretación alguna ni requiere de una evaluación subjetiva.

Según explicado en la sección anterior, el *Reglamento del Condado*, dispone los usos permitidos conforme a la clasificación territorial de la zona en que se ubique la estructura. En lo pertinente a la controversia ante nuestra consideración, dicho Reglamento establece que en la Zona Residencial (R), se permite, de manera limitada, el uso correspondiente al servicio de casa de huéspedes ("*guest house*"). Asimismo, para los usos clasificados con carácter limitado, el *Reglamento del Condado* incluye en su Sección 2.05 "algunos usos, en orden alfabético, cuyas

características es necesario cualificar y cuantificar para asegurar el orden, la seguridad y el bienestar público". En lo concerniente a las casas de huéspedes, la Sección 2.05.03 establece que en la Zona Residencial (R) no se permitirán casas de huéspedes con barra y restaurante y que las mismas se limitarán a brindar cama y desayuno.

Contrario a lo alegado por la parte apelada, los usos designados como limitados en el *Reglamento del Condado* no tienen como consecuencia que el uso propuesto esté sujeto a una evaluación que trasciende la mera aplicación mecánica de criterios objetivos. El apelado fundamentó su argumento meramente en la inferencia de que la Sección 2.05 del Reglamento del Condado, la cual dispone que es necesario cualificar y cuantificar las características de algunos usos, automáticamente implica un análisis más detallado y específico y por ende una determinación discrecional. Por lo anteriormente expuesto, entendemos que el foro primario incidió al concluir que la designación de un uso, como un "uso limitado" en el *Reglamento del Condado*, por sí sola, modifica el carácter del trámite para su autorización a uno discrecional. Asimismo, colegimos que el foro primario erró al ordenar la demolición de la obra construida ya que el *Permiso de Construcción* impugnado fue expedido por el Profesional Autorizado conforme a las leyes y los reglamentos vigentes.

Ahora bien, en lo concerniente al primer y tercer señalamiento de error, debido al resultado al que llegamos en cuanto al segundo error, entendemos que no es necesario discutirlos.

**IV.**

Por los fundamentos antes expuestos, **REVOCAMOS** la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones